CASTOR, FERMINA, CARMEN, FÉLIX, JULIO y ESTEL ABRÉU RIVERA, demandantes y apelantes, *v.* ANDRÉS M. DÍAZ, sustituído por sus herederos, su Viuda ELVIRA GUARDIA y sus padres legítimos JUAN PEDRO DÍAZ y JULIA TALAVERA; y MARYLAND CASUALTY COMPANY, demandados y apelados.

Núm. 7379.—*Sometido:* Diciembre 3, 1937. *Resuelto:* Febrero 18, 1938.

*Luis Apellániz Storer,* abogado de los apelantes; *Juan B. Soto, Juan F. Soto* y *Enrique Igaravídez,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los demandantes, hermanos de Concepción Abréu Rivera, de quien alegan ser únicos y universales herederos,

interpusieron demanda sobre daños y perjuicios contra Andrés M. Díaz, sustituído a su fallecimiento por sus legítimos herederos, y contra Maryland Casualty Company.

Alegan en la demanda, entre otras cosas:

"IV. Que el día 16 de julio de 1934, hacia las dos y treinta minutos de la tarde, el indicado automóvil 'Chevrolet' número 915, operado por su dueño, el propio Andrés M. Díaz, conductor número 3597, mientras marchaba con dirección al sitio denominado 'Martín Peña,' por la Avenida Fernández Juncos, en Santurce, P. R., en las inmediaciones de la parada veintiséis y media, arrolló a Concepción Abréu Rivera, de dieciséis años de edad, mientras caminaba por la extrema derecha de dicha avenida, delante y en la misma dirección que marchaba el referido vehículo manejado por dicho Andrés M. Díaz, o sea de San Juan a Martín Peña, siendo allí y entonces la mencionada Concepción Abréu Rivera violentamente lanzada al pavimento de dicha avenida y cayendo sobre el encintado de concreto que bordea dicha avenida en su lado sur.

" . . . . . . . . . .

"VI. Que debido al mencionado choque del vehículo guiado por dicho Andrés M. Díaz con el cuerpo de dicha Concepción Abréu Rivera, ésta recibió golpes en la cabeza que causaron la fractura de su cráneo y múltiples contusiones y erosiones en otras partes de su cuerpo a consecuencia de lo que falleció dicha Concepción Abréu Rivera pocos momentos después en el Hospital Municipal de San Juan, P. R.

Como actos únicos y específicos de culpa y negligencia, se imputan a Andrés M. Díaz el de conducir su automóvil a una velocidad mayor de 30 kilómetros por hora y el de no reducirla al alcanzar a la interfecta Concepción Abréu Rivera.

Desestimada la demanda por la Corte de Distrito de San Juan, los demandantes apelaron, señalando la comisión de cinco errores, los cuales pueden agruparse en dos, a saber:

 Que la corte inferior erró al interpretar y apreciar la prueba, resolviendo el caso con prejuicio y pasión.

El juez sentenciador hizo el siguiente análisis de la prueba aportada por los demandantes:

"El testigo Vicente Suárez, uno de los principales de la parte demandante, declaró que el 16 de julio de 1934, era dueño de un cafetín en la parada 26, Ave. Fernández Juncos, y que momentos antes del accidente Concepción y su compañera entraron en su cafetín para protegerse de la lluvia. Que una vez cesó la lluvia fuerte, las dos muchachas salieron con dirección a Martín Peña y que un momento después pasó un automóvil frente a su cafetín, a una velocidad exagerada. Que el testigo se asomó a la puerta porque la velocidad que llevaba le llamó la atención, siendo tan exagerada que al pasar por los charcos de agua de la carretera lanzó agua a la puerta del cafetín. Que él estaba fuera del mostrador, cerca de la puerta y al pasar el automóvil salió inmediatamente a la carretera, viendo las muchachas tendidas en el pavimento como a 150 metros del cafetín. Que cuando salió a ver el automóvil, cerró el cafetín y después que ayudó a echar la muerta en el carro, volvió a abrirlo. Que no declaró ante el Juez Municipal ni ante el Fiscal, porque hubiera tenido que cerrar el cafetín y esto le causaba perjuicios en su negocio. Que su dependiente no estaba en el cafetín en aquellos momentos porque se hallaba durmiendo. Finalmente declaró que mandó aviso al padre de la otra muchacha que estaba herida porque era amigo suyo y comerciante como él.

"Este testigo no mereció crédito alguno a la Corte y la impresión que nos produjo fué la de un testigo falso. Tal es la sorpresa que le causa un automóvil que pasa frente a su establecimiento a 35 ó 40 millas por hora (así lo declaró) que abandona su negocio para irse a la carretera a contemplar tan interesante espectáculo. A fin de exagerar más la velocidad a que iba el automóvil, declara que al pasar el vehículo frente a su puerta, se hallaba él fuera del mostrador, cerca de la puerta y a pesar de salir rápidamente, cuando llega a la carretera, es decir cuando traspasa el umbral de la puerta del cafetín, tan rápidamente ha pasado el vehículo que no sólo tuvo tiempo de cubrir la distancia de 150 metros, si que también ya había dado los patinazos y estaban tendidas en el suelo las dos jóvenes, sin que él pudiera ver lo sucedido antes de caer las jóvenes. Abandona entonces su negocio, cierra la única puerta del cafetín y se dirige al sitio del suceso a prestar ayuda a las jóvenes, y no regresa a su establecimiento hasta después de haberlas dejado en el vehículo que había de conducirlas al hospital, y hace todo esto y sacrifica su negocio a pesar de las distintas personas que se hallaban en el sitio y que podían hacer lo que él declara que hizo. En cambio, teniendo como tenía un dependiente no pudo comparecer a declarar ante el Fiscal o el Juez Municipal, porque tenía que abandonar su negocio

y esto perjudicaba sus intereses. Declaró que era amigo y compañero del padre de una de las jóvenes.

"Si se leen las contestaciones que dió al hábil examen de repregunta que le hizo la representación de los demandados, se advertirá inmediatamente la falsedad de este testigo.

"El otro testigo de los demandantes, Carlos V. Roger, que se hallaba en el mismo cafetín en los momentos del accidente, y que declaró sobre la exagerada velocidad del automóvil, tampoco es digno de crédito. Este testigo declaró que trabaja actualmente y trabajaba el 16 de julio de 1934, en el despacho en la fábrica de sombreros 'Britania' y a pesar de que el 16 de julio de 1934, fué lunes y no festivo y aunque declaró que por la mañana estuvo en su trabajo, no explica satisfactoriamente por qué se encontraba en el cafetín a la hora del accidente, que fué entre dos y tres de la tarde. Declaró que aquella tarde no fué a trabajar, aunque no se hallaba enfermo, no hacía ninguna diligencia que justificara su falta de asistencia a su trabajo, declarando además que estaba en el cafetín desde la 1 ó 1½ de la tarde. Tampoco declaró ante el Fiscal o el Juez Municipal, y aunque manifestó que se hallaba con el testigo Suárez en la puerta del cafetín y que ambos miraban al mismo tiempo hacia el sitio del accidente, Suárez, según su declaración, sólo alcanzó a ver las jóvenes tendidas en el pavimento, mientras el testigo Roger nos describe el accidente con lujo de detalles, desde que el *chauffeur* trató de refrenar y se produjo el patinazo, hasta que las *jóvenes* fueron alcanzadas por el automóvil y lanzadas al suelo.

"El cabo José María Rosario, que en el juicio oral declaró que Andrés M. Díaz le había dicho al llegar él al sitio del accidente, que iba un poco ligero porque era comisionista e iba para la isla, en la investigación practicada ante el Fiscal, al preguntársele si Andrés M. Díaz le había hecho alguna manifestación, se limitó a decir: 'El me dijo que las muchachas estaban tomadas."

"El testigo de los demandantes, Juan Herrero, que declaró que el automóvil venía a 40 kilómetros por hora (25 millas) manifestó en el curso de su declaración que él no conoce de velocidades.

"El testigo de los demandantes, Alfredo Rodríguez, declaró que el automóvil marchaba a 30 millas por hora, habiendo declarado anteriormente ante el Fiscal que la velocidad del vehículo era de 25 a 30 millas por hora.

"Los testigos de los demandados aseguran que el automóvil iba despacio y que al acercarse a las jóvenes éstas hicieron ademán de cruzar la carretera, que entonces el *chauffeur* tocó *klaxon* y ellas se turbaron por lo que el *chauffeur* tuvo que aplicar los frenos, resultando entonces el patinazo que motivó el accidente.

"La teoría de los demandados nos parece más lógica y razonable que la de los demandantes y está sostenida por testigos desapasionados, de cuya veracidad no hay motivos para dudar, por lo que al pesar la evidencia de una y otra parte sobre este punto declaramos que la preponderancia de la prueba está a favor de los demandados."

Teniendo en cuenta que en los demandantes recae el peso de la prueba, la evidencia que aportaron resulta en verdad insuficiente, y como dice la corte sentenciadora, muy débil para basar en ella una sentencia, sobre todo al compararla con la prueba en contrario de los demandados.

Contrario a lo que sostienen los apelantes en el cuarto señalamiento, en la apreciación de esa evidencia se advierte el juicio razonado, justo y desapasionado.

También nos parece, como a la corte inferior, más lógica la teoría de cómo sucedió el accidente, expuesta por los demandados. Dicen éstos que hallándose mojada la carretera con motivo de fuertes aguaceros que cayeron antes y aún en el momento del accidente, el automóvil de Díaz hizo uno o dos zigzags al aplicar éste los frenos para defender a la interfecta, cuando ésta abandonó la derecha por donde caminaba e intentó cruzar la carretera. A nuestro juicio es de perfecta aplicación lo resuelto por esta corte en *Meléndez* v. *Álvarez*, 35 D.P.R. 343, 347, donde se dice:

" . . . La presunción racional y lógica en contrario a lo sentado por el juez inferior es la que establece la jurisprudencia, diciendo que el conductor de un vehículo de motor tiene el derecho a asumir que una persona parada en un lugar seguro no dejará repentinamente aquella posición, colocándose en el paso del vehículo. Y por el contrario tiene el derecho de asumir que así no ha de actuar. 3 Cal. Jur. 872."

No cometió la corte sentenciadora error alguno en la apreciación de la prueba.

■ Que la Corte inferior erró al dejar de aplicar la ley que determina cuándo constituye evidencia prima facie de ser conducido un vehículo sin el debido cuidado.

En apoyo de este señalamiento invocan los apelantes los artículos 12, letras (*a*) y (*e*) y 13, letra (*a*) de la Ley núm. 75, aprobada en 13 de abril de 1916 (pág. 144), para reglamentar el uso de vehículos de motor en Puerto Rico.

Siendo insuficiente la prueba aducida por los demandantes para establecer a satisfacción de la corte sentenciadora la velocidad a que el demandado conducía el vehículo en el momento del accidente, no existe base alguna para la presunción de que dicho vehículo era conducido sin el debido cuidado. No son, por tanto, aplicables los preceptos citados.

*La sentencia apelada debe ser confirmada.*

Los Jueces Presidente Señor Del Toro y Asociado Señor Córdova Dávila no intervinieron.