Josefa Osorio por sí y en representación de su hija menor Pilar Cobián, demandante y apelada, *v.* Manuel Taboada, demandado y apelante.

Núm. 7098.—*Sometido:* Marzo 12, 1937. *Resuelto:* Marzo 11, 1938.

*J. Pedro Miranda,* abogado del apelante; *Susoni & Defendini,* abogados de la apelada.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Hubo suficiente evidencia en este caso para justificar como probados los siguientes hechos, tomados substancialmente de la opinión de la corte inferior:

"Por escritura de 26 de septiembre de 1934, sobre disolución de sociedad y constitución de otra nueva, Manuel Taboada y R. Ríos García formaron una sociedad mercantil regular colectiva bajo la razón social de M. Taboada & Co., para girar en esta plaza, con domicilio en el núm. 55 de la calle Cerra de Santurce, retrotrayendo sus efectos al 7 de mayo de 1933 en que había vencido la anterior sociedad. El objeto fué dedicarse entre otros negocios a la compraventa de provisiones y comestibles, verduras, frutos del país y extranjeros, venta de carnes, pescado, leche, etc. La administración y gerencia de la compañía quedó encargada a ambos socios indistintamente. En la escritura anterior de la sociedad que fué disuelta otorgada el 11 de octubre de. 1930 aparece que dicha sociedad tenía entonces su domicilio en el núm. 41 de la calle Ernesto Cerra de Santurce.

"Allá el día 13 de enero de 1934, existía en la casa núm. 55 de la calle Cerra de Santurce, P. R., donde según la escritura de 26 de septiembre de 1934, la sociedad tenía su domicilio, un establecimiento denominado 'Placita Taboada.' Se trató de demostrar por la evidencia del demandado Manuel Taboada que el negocio de plaza de mercado y puesto de carne establecido en dicho sitio fué primero de Rosario O'Neill, quien falleció y después de Pedro Soto, quien es ahora chófer de M. Taboada & Co., hasta allá en el mes de mayo de 1934, en que dicha sociedad trasladó su domicilio que estaba sito en Ernesto Cerra 41 de Santurce. Sin embargo, la demandante presentó evidencia documental de archivos públicos, además de lo que resulta de la escritura de sociedad demostrativa de que allá en los días 18 y 19 de diciembre de 1933, el inspector insular de pesas y medidas Sr. Jorge Biascoechea inspeccionó los aparatos de pesar del establecimiento plaza de mercado sito en la calle Ernesto Cerra núm. 55 de Santurce del comerciante Manuel Taboada y M. Taboada & Co., y que allá el 29 de diciembre de 1933, M. Taboada & Co., solicitó del Departamento de Sanidad un permiso para establecer un negocio propiedad de M. Taboada & Co., y que inspeccionado el local

por Jesús Pereyó, Jefe de Sanidad en la referida fecha se le expidió la licencia núm. 472.

"Por el resultado de la evidencia, la Corte estima demostrado que allá el 13 de enero de 1934, cuando ocurrieron los hechos objeto de la demanda, el establecimiento de mercado y puesto de carne, denominado Plaza Taboada, que estaba situado en la calle Cerra núm. 55, de Santurce, era propiedad de la mercantil M. Taboada & Co. La Sociedad tenía además otro negocio de colmado en Ernesto Cerra núm. 41 de Santurce. Manuel Taboada actuaba como dueño, el superior, el que mandaba en el establecimiento de mercado y puesto de carne, según declaró Carmelo Vega, y se hallaba él allí cuando ocurrió el accidente, no así Rufino Ríos García, y parece natural que para aquellas personas no relacionadas con la sociedad se considerara el establecimiento como de Manuel Taboada solamente.

"En el establecimiento de Manuel Taboada & Co., se tenía un perro grande de colores blanco y amarillo. Se admitió en el acto del juicio que el animal era una fiera. Durante el día se le tenía siempre amarrado a cadena en la parte atrás del establecimiento. El animal era tenido en la vecindad como de la propiedad de Manuel Taboada. Allá el 13 de enero de 1934, entre 7 y 8 de la noche, Josefa Osorio y su hija menor, Pilar Cobián, de 18 años de edad, mientras pasaban por la acera derecha, frente al citado establecimiento, fueron súbitamente atacadas por el referido perro, que salió del establecimiento arrastrando la cadena. Pilar Cobián recibió cinco mordidas en el brazo derecho y en la mano, en el abdomen y en el pecho destrozándole el vestido y tirándola en el suelo; Josefa Osorio fué mordida únicamente en la espinilla de la pierna derecha. Del establecimiento salieron también en ese momento el dependiente Alberto Rodríguez y Manuel Taboada. El primero agarró el perro y lo entró en el establecimiento, y el segundo, o sea Manuel Taboada ordenó a Pedro Soto, el chófer, que llevara los lesionados a curar a la sala de socorro, y dijo además que al perro no se debía tener sin bozal porque lo iba a meter en un compromiso. Pedro Soto así lo hizo en un automóvil. El practicante Juan Marrero de la sala de socorro de Santurce, de la parada 17, Santurce, curó esa noche a Pilar Cobián de heridas producidas por las mordeduras del perro aplicándole una inyección de suero antitetánico que pagó en la suma de $2.00 Manuel Taboada, por medio del chófer. Josefa Osorio no fué curada esa noche por el practicante, sino al siguiente día, siendo su herida de carácter leve. Pilar Cobián fué llevada a su casa esa noche mientras Josefa Osorio volvió al establecimiento donde Ma-

nuel Taboada para que las ayudara y declara dicha señora que él entonces se negó diciéndole que el perro no era suyo. Después de los hechos y de haberse llevado las lesionadas a la sala de socorro, intervino el policía Fidel Franco, quien declara que practicó una investigación y el 19 de febrero de 1934, o sea un mes y 5 días después, denunció a Alberto Rodríguez, acusándole el tener el perro sin estar provisto de licencia o placa, con infracción de la Ordenanza Municipal núm. 92, de San Juan. El acusado se declaró culpable, sin celebrarse juicio, el día 20 de marzo de 1934, y fué condenado al pago de una multa.

"La evidencia ha demostrado además que Josefa Osorio estuvo como dos meses sin poder trabajar, siendo lavandera y planchadora, porque la herida se le infestó, presentando la cicatriz en la pierna, y que Pilar Cobián estuvo recluída 10 días en el Hospital Municipal debido a las lesiones recibidas y manifiesta que una de las mordeduras le alcanzó un nervio de la mano derecha que le impedía cerrarla bien."

La corte dictó sentencia en favor de la demandante, concediéndole en concepto de daños y perjuicios $100 a la madre y $300 a la hija.

■ Los señalamientos de error núms. 1, 2, 3 y 4 se refieren a la evidencia admitida por la corte respecto al dueño del establecimiento de donde salió el perro. Nos inclinamos a convenir con la discusión de estos errores hecha por la apelada, pero aun si toda la evidencia hubiera sido erróneamente admitida, existe suficiente base en los autos para justificar la conclusión de que Manuel Taboada estaba en posesión o dominio del establecimiento, de suerte pues, que la admisión de la evidencia no fué perjudicial.

■ No creemos que la corte cometiese error al admitir una certificación del Jefe del Negociado de Pesas y Medidas que se refería a otras certificaciones hechas por un inspector de dicho Negociado y que tendían a demostrar la propiedad y dominio del establecimiento en la persona del demandado. La solicitud de patente fué hecha por M. Taboada & Co., de la cual Manuel Taboada era socio gestor, de no ser el único socio. Dicha solicitud fué admitida sin objeción.

■ El sexto señalamiento alude a una enmienda de la demanda permitida por la corte en el transcurso del juicio. En cuanto a esto la corte dijo:

"La enmienda consistió, pues, en alegar que el establecimiento era de M. Taboada & Co., en vez de Manuel Taboada, y adicionar que el perro estaba en posesión o bajo el control del demandado, quedando en la demanda la alegación sobre propiedad del animal. La enmienda se permitió para adaptar las alegaciones a las pruebas, ya que en nada variaba el problema jurídico planteado desde el principio, no constituía nueva causa de controversia, y no existía el más leve motivo por pensar que pudiera perjudicar al demandado. *Oronoz* v. *Román,* 26 D.P.R. 25; *Mongil* v. *Castro,* 19 D.P.R. 682. Después de permitirse la enmienda teniendo la corte en cuenta el principio altamente liberal que informa la materia, dió al demandado oportunidad para presentar nueva evidencia para sostener cualquier otro extremo de su defensa, la que no utilizó. La contención del demandado era, presentando evidencia sobre esos extremos, que el establecimiento de Cerra 55 pertenecía a Pedro Soto, al tiempo del accidente y que el perro era propiedad y estaba en posesión de Alberto Rodríguez por lo que las enmiendas no podían perjudicarle en modo alguno. Confirmamos la resolución permitiendo las enmiendas."

■■ El séptimo señalamiento de error ataca la suficiencia de la prueba para sostener la primera causa de acción, o sea el hecho del accidente o las mordeduras del perro. Encontramos que la evidencia es ampliamente suficiente como dice la corte.

La corte inferior dictó sentencia en favor de la demandante, sin excluir los honorarios de abogado. No encontramos que se cometiera error en el ejercicio de esta discreción y con ello resolvemos el octavo señalamiento de error.

El noveno señalamiento lee así:

"La corte sentenciadora cometió error, porque la sentencia dictada es contraria a derecho."

Convenimos con la apelada en que no era necesario probar que el perro pertenecía a M. Taboada & Co. Bastaba demostrar que el establecimiento era de la propiedad de di-

cha firma y que Manuel Taboada estaba en posesión y dominio tanto del establecimiento como del perro.

El artículo 1805 del Código Civil, ed. 1930, dispone como sigue:

"El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe. Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido."

El artículo 1803 del Código Civil no tiene aplicación, y el caso está cubierto por nuestra decisión en *Torres v. Dávila,* 47 D.P.R. 315. Tampoco importa que el accidente ocurriese fuera del establecimiento de M. Taboada & Co. si, conforme resolvió la corte, el animal estaba bajo el dominio del demandado. Nadie podría leer la evidencia en este caso sin llegar al convencimiento claro, tanto por las declaraciones de los testigos como por los actos del demandado, de que éste cae dentro de las disposiciones del estatuto.

El décimo señalamiento de error sostiene que la sentencia era contraria al peso de la prueba. Resolvemos lo contrario. Hubo aun la admisión por parte del demandado de que el perro era una "fiera."

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Córdova Dávila no intervino.