NÉLIDA, MANUEL, JORGE y NORMA ANDINO BLANCO, menores de edad, representados por su madre con patria potestad BLANCA BLANCO y ésta por su propio derecho, demandantes y apelados, *v.* CENTRAL VICTORIA, INC., demandada y apelante.

Núm. 8120.—*Sometido:* Junio 14, 1940. *Resuelto:* Julio 16, 1940.

*Cayetano Coll Cuchí,* abogado de la apelante; *Carlos D. Vázquez,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

La viuda e hijos de Manuel Andino Santiago reclamaron de la corporación demandada una indemnización de $10,000, alegando que el accidente que ocasionó la muerte del causante fué motivado por la negligencia y falta de cuidado de la demandada. En la demanda se alega qué el día del accidente Andino viajaba de Río Piedras a Carolina en un automóvil público; que cuando el vehículo pasaba por la carretera a una velocidad moderada, "un novillo que estaba en posesión de la demandada Central Victoria, Inc., y el cual estaba realengo y sin ninguna persona que lo custodiara, salió súbitamente a la carretera por donde viajaba el referido vehículo, debido a la negligencia de la demandada, situándose inesperadamente al frente del automóvil en que viajaba el causante de los demandantes, habiendo el conductor de dicho automóvil aplicado los frenos y desviado hacia la izquierda

para evitar el choque con el citado novillo, lo que dió lugar a que el automóvil chocase con un árbol que había en la orilla de la carretera y se volcara.''

Desestimada la excepción previa de falta de causa de acción, contestó la corporación demandada negando específicamente los hechos esenciales de la demanda, y alegó: que la demandada no tuvo participación en forma o manera alguna en el accidente que causó la muerte de Andino, y que el animal concausa del accidente no era propiedad de la corporación demandada.

Visto el caso ante la Corte de Distrito de San Juan dictó ésta sentencia declarando con lugar la demanda y condenando a la demandada al pago de $3,500 de indemnización, costas y $350 como honorarios de abogado de la parte actora. Apeló la demandada. Y para sostener su recurso alega que la corte inferior erró:

1. Al desestimar la excepción previa a la demanda.

2. Al declarar que la ley que rige este caso es el artículo 1805 del Código Civil.

3. Al declarar que, aun aceptando que la novilla que causó el accidente fuese propiedad de Isidra Orozco, la demandada estaba en posesión de la novilla, a los fines de la responsabilidad civil.

4. Al declarar que el uso de los pastos de la demandada por la dueña de la novilla no constituye uno de los actos de tolerancia a que se refiere el artículo 363 del Código Civil.

5. Al declarar que la causa próxima del accidente fué la negligencia de la demandada.

6. Al declarar probados los hechos alegados en la demanda.

7. Al declarar con lugar la demanda.

Para plantear y resolver la única cuestión legal envuelta en los siete señalamientos de error es necesario determinar primeramente cuáles son los hechos esenciales establecidos por la evidencia. La corte sentenciadora declaró que el accidente había ocurrido así:

''En la madrugada del día 23 de febrero de 1938, el causante de los demandantes en este pleito, Manuel Andino Santiago, viajaba en un automóvil público guiado por Elías Cardona, en unión a siete

personas más; iba por la carretera que conduce de Río Piedras a Carolina, con dirección al sitio donde trabajaba, y al llegar a una alcantarilla cerca de la Central Victoria, mientras el carro era conducido a una velocidad regular pero no excesiva (véase hecho 4to. de la contestación), una becerra de color negro salió del lado izquierdo de la carretera, se situó inesperadamente frente al automóvil, haciendo que chocara dicho vehículo, y al enderezar el carro se presentó otra becerra y el conductor del vehículo desvió entonces su carro, yéndose hacia la cuneta y volcándose. Casi todas las personas que iban en el automóvil resultaron lesionadas y Manuel Andino Santiago resultó muerto. Andino era capataz de una de las agencias federales que realizan trabajos en la reserva forestal; ganaba 50 centavos por hora y trabajaba cinco días a la semana, o sea 40 horas semanales. Andino iba sentado al lado de la puerta en el asiento delantero del vehículo, y al desviar el carro para no atrapar a la segunda becerra que se presentó, se fué hacia la cuneta, tropezando con un árbol y volcándose."

Hemos examinado la evidencia y encontramos que es ampliamente suficiente para sostener las conclusiones de la corte inferior en cuanto a la forma y manera en que ocurrió el accidente. La prueba establece claramente los siguientes hechos adicionales:

Que la primera novilla, con la cual chocó el automóvil dejándola herida en la carretera, era propiedad de Isidra Orozco, arrimada de la Central Victoria, quien tenía su ganado en un cercado perteneciente a la central y lo mantenía en los pastos de la demandada, con el consentimiento de ésta; que después de chocar con dicha novilla el carro se enderezó y siguió su marcha y más adelante se encontró con una segunda novilla, marcada "C. V.," propiedad de la Central Victoria; que para no chocar con dicha segunda novilla, **el conductor del automóvil** se vió obligado a aplicar el freno repentinamente, lo que hizo que el carro resbalase y fuese a chocar contra un árbol; que la novilla marcada "C. V." fué llevada después del accidente por dos de los pasajeros del automóvil al cuartel de la policía, en donde fué reclamada más tarde por el administrador de la corporación demandada como propiedad de ésta.

La teoría de la corporación demandada es que la novilla de Isidra Orozco, con la cual chocó el automóvil, fué la causa próxima del accidente en que perdió su vida el causante de los demandantes; y que a la demandada no se le puede hacer responsable de los daños causados por un animal que no es de su pertenencia y sí de un arrimado de la central, a quien ésta, por mera tolerancia, le permitía tenerlo en los cercados y pastos de la corporación.

La corte sentenciadora al fijar la responsabilidad por el daño causado a los demandantes se expresó así:

"Otra cuestión que surge de este asunto es cuál de las dos novillas es responsable del accidente. Después de analizar la prueba, llego a la conclusión de que tanto la novilla estropeada y muerta por el automóvil, como la otra qué fué recogida por la Central Victoria del cuartel de la policía de Carolina y cuya propiedad quedó expresamente admitida por la prueba, fueron responsables del accidente . . . No hay discusión en cuanto a que la demandada estaba en posesión de la novilla, aun aceptando que la misma fuese propiedad de Isidra Orozco. . . . .; pero en este caso está fuera de duda y de discusión que tanto una novilla como la otra estaban en la posesión de la demandada. Pudiera alegarse que lo que hizo la central fué un mero acto de tolerancia al permitir que una novilla de una persona que vive en los terrenos de la central pastara en el mismo sitio en que lo hacían los demás animales de la central y de los otros empleados; pero esto no exime de responsabilidad a la demandada, ya que por ese mero hecho y esa mera tolerancia ella está en posesión legal de la novilla y debe tomar todas las precauciones para que estas novillas no salgan al camino público y puedan ocasionar accidentes como el que da origen a esta demanda."

Como se ve, la corte inferior llegó a la conclusión de que una y otra novillas, la de la arrimada y la de la central, habían sido en igual grado las causantes del accidente y que la demandada era responsable por los daños causados por ambas.

A nuestro juicio, ni la teoría de la demandada ni el precedente razonamiento de la corte sentenciadora están sostenidos por la evidencia.

En el automóvil viajaban en el momento del accidente el chófer, Manuel Andino y siete pasajeros más. En el acto del juicio declararon el chófer Elías Cardona y seis de los pasajeros, todos ellos testigos oculares de la forma y manera en que ocurrió el accidente. Sus declaraciones son substancialmente idénticas, como se verá por lo que insertamos a continuación:

Bonifacio Llano, declaró:

"En el kilómetro 10 llegando a la Central Victoria, muy rápido se presentó una novilla o novillo, no pude apreciar si era hembra o macho, y atravesó la carretera. El chófer trató de defenderse. Pasó y le dió, pero después al enderezarse, delante, seguido, rápido, se presenta otra y entonces metió el chófer su freno, cuando le dimos a un palo y el carro paró. Y al irse a la cuneta se volcó y le dió a un palo de mango, saliendo heridos casi todos y muerto Manuel Andino."

El pasajero José Dick, dijo:

"De Río Piedras íbamos para el campamento y al llegar más acá de la Central Victoria salió de golpe una novilla de la derecha a la izquierda y por más que desvió el carro, siempre le dió y más alante salió la otra cuando él enderezó; tuvo que desviar otra vez y se fué a la cuneta al pegar el freno y al volcarse no me dí cuenta de nada más. Me vine a dar cuenta cuando salí del hospital de Carolina. . . ."

Sometido a una extensa y hábil repregunta, el testigo Dick declaró así:

"P. En el primer choque, ¿quién se tiró a la calle?
"R. En el primer choque no se tiró nadie.
"P. ¿De manera que cuando ocurrió el primer choque no se abrió la puerta?
"R. No, señor.
"P. ¿Ocurrido el primer choque, qué hizo el chófer?
"R. Enderezó.
"P. ¿Hacia dónde?
"R. Hacia su derecha y cuando enderezó . . .
"P. ¿Cuando enderezó siguió andando el carro?
"R. Sí, señor.

"P. ¿Como un trecho de cuánto?

"R. Más o menos como veinte pies, que fué cuando salió la otra.

"P. ¿Y entonces se desvió?

"R. Sí, señor.

"P. ¿Hacia dónde?

"R. A la izquierda.

"P. ¿Y chocó con esa otra novilla o no chocó?

"R. No chocó, por eso fué que nos desviamos y nos volcamos."

## El chófer Elías Cardona, depuso así:

"Allá por el kilómetro 10 hay una semicurva, antes de llegar a la Central Victoria y salió de golpe una novilla de la zanja derecha para la izquierda y cuando salía yo traté de defenderme, pero siempre le dí con el tapalodo derecho y cuando voy a enderezar para el medio, me encuentro otro animal. Al encontrarme con la segunda novilla tuve que frenar. Puse el pie en el freno y ahí saqué el pie del freno y le tiré un cambio para evitar que chocara y ya el carro, la rueda de acá, había caído en la parte honda de la cuneta y se viró."

## Camilo de Jesús, pasajero, describió el accidente así:

"Más acá de la Central Victoria se presentó una novilla y ahí le dimos un cantazo y al momento otra novilla y ahí Elías desvió y cayó en la cuneta y volcó el carro. Se mató el Sr. Andino y yo quedé golpeado."

## El pasajero Carlos Martínez depuso así:

"Eso ocurrió debido a que en los momentos en que el carro iba corriendo por su derecha, saltó la novilla de su derecha a la izquierda en la carretera. La vi cuando le dió el carro. Y el carro dió un zigzag y cuando estaba casi en el centro de la carretera, otra novilla que cruza de la derecha a la izquierda y el chófer para defender esa novilla se fué a la cuneta."

## Alejo Otero Luna, otro de los pasajeros, declaró:

"Nosotros íbamos en el carro de Elías Cardona y cerca de la Central Victoria había dos novillas en la cuneta, en la parte derecha y salió una novilla rápidamente de la derecha hacia la izquierda y el chófer dió un zigzag hacia la izquierda defendiendo la novilla y enderezó y siguió de nuevo y más alante estaba la otra y el carro se descontroló y siguió dando zigzags y se tiró el carro a la cuneta y siguió y yo me tiré y más alante el carro chocó con un árbol y

estaba el Sr. Antonio Andino muerto en la carretera. El carro chocó con la primera novilla, que quedó herida allí. La segunda novilla fué a la que se debió, la que promedió (*sic*) que el carro se volcara, que salió rápidamente; el chófer se descontroló y chocó con un árbol.''

El mismo testigo al ser repreguntado contestó:

''P. ¿Qué hizo usted cuando el chófer chocó con la novilla?

''R. Seguí en el carro y ·más alante le salió la otra, que fué cuando el chófer se descontroló.

''P. ¿Usted nunca se tiró del carro?

''R. Sí, señor, después del segundo choque, que fué con un árbol.

''P. ¿De manera que si el carro no choca con el tronco no hay el ·accidente. ¿Ésa es su manera de ver las cosas?

''R. Pero lo que yo le quiero explicar es que si no hay la otra novilla el carro sigue derecho.''

Otro pasajero, Delfín Negrón, depuso así:

''Ocurrió que momentáneamente salió un animal de la derecha a atravesar la carretera. Un becerro negro, y entonces pues natural, como salió tan momentáneamente se le atravesó al frente del carro, y el carro, por mucho que no quiso darle, siempre le dió un cantacito. Entonces el carro dió un zigzag y después que el carro estaba otra vez controlado, aparece una nueva novilla, haciendo que el chófer tuviera que meter frenos para no darle, en lo cual, al meter el freno el carro resbaló contra el lado y dió en un árbol y se viró. Eso fué lo que pasó.''

Y al ser repreguntado, contestó así:

''P. ¿De manera que cuando el carro chocó con el becerro, Andino estaba vivo; cualquier cosa que pasara fué después del choque?

''R. Cuando chocó fué que se mató.

''P. ¿Cuando chocó con el palo fué que se mató?

''R. Cuando el carro se viró, cuando chocó no, cuando se viró; fué que se mató.

''P. ¿Qué fué lo que desvió el carro hacia el palo?

''R. La segunda novilla, el chófer trató de no darle, quiso salvarnos a todos, salvar el carro y salvar la novilla y metió los frenos.

''P. ¿Si no hubiera metido los frenos qué hubiera pasado?

''R. Quizás nos hubiéramos matado todos.''

 La cuestión principal a resolver es: ¿Cuál de las dos novillas fué la causa próxima del accidente en que perdió su vida Antonio Andino?

Es sumamente difícil hacer una definición del término "causa próxima," que por su claridad y precisión sea aplicable a todos los casos. No se ha formulado aún una regla exacta para determinar cuándo las causas son próximas y cuándo son remotas. Cada caso debe ser resuelto tomando en consideración los hechos y circunstancias especiales del mismo.

En el caso de *Atchison T. & S. R. Co.* v. *Calhoun*, 213 U. S. 1, 53 L. Ed. 671, en el que como en el presente la corte se vió obligada a decidir cuál de las dos negligencias concurrentes en un accidente había sido la "causa próxima" del daño, la Corte Suprema Federal se expresó así:

"La ley, en su administración práctica, en casos de esta clase considera solamente la causa próxima o inmediata, y no la remota, y en su investigación de lo que es próximo y de lo que es remoto, se niega a aventurarse en sutilezas metafísicas. Cuando, en el desarrollo de los sucesos, entre la falta original y el daño final interviene una causa enteramente independiente y no relacionada con la primera, y esa causa es por sí sola suficiente para ser considerada como causante del daño, la segunda causa es de ordinario considerada como la causa próxima y la otra como la causa remota. (Citas.) Esto es enfáticamente cierto cuando la causa interventora es el acto de alguna persona no relacionada en manera alguna con el actor original. No obstante esto, una persona descuidada es responsable de todas las consecuencias naturales o probables de su falta. Si la falta es de tal naturaleza que, de acuerdo con la experiencia usual humana, debe presumirse que ha de invitar o inducir la intervención de una causa subsiguiente, la causa interventora no le eximirá, y el daño resultante deberá ser considerado como el resultado de la falta original."

Los párrafos que citamos a continuación nos ayudarán a resolver la cuestión pendiente:

"Si el acto original es torticero y, de acuerdo con el curso natural de los sucesos, habría naturalmente de resultar perjudicial a alguna persona o personas, y de hecho causa un daño a través de

la intervención de otras causas que no son torticeras, el daño será imputado a la causa torticera, dejando a un lado aquellas que son inocentes. *Pero, si el acto original se convirtió en dañino solamente como consecuencia de la intervención del acto u omisión ilegal y distinto, de otra persona, el daño será imputado a la última falta como causa próxima, y no a aquella otra que era más remota.''* (Itálicas nuestras.) *Schewartz* v. *Shull,* 31 S. E. 914, 917, 45 W. Va. 405; Cooley, Torts, pág. 76; 62 C. J. pág. 1120.

''Cuando la línea de causalidad ha sido interrumpida por la intervención de alguna causa eficiente e independiente, esa causa interventora debe ser aceptada como la causa próxima, y en una acción contra el culpable original la ley no se ocupará de seguir investigando la cuestión o el daño resultante. Sin embargo, para que el infractor original pueda interponerla como defensa, la causa interventora debe ser independiente y responsable por sí misma.'' *Watters* v. *City of Waterloo,* 101 N. W. 871, 126 Iowa 199.

''No es necesario que la causa próxima sea la única causa. Si varias causas eficientes contribuyen al daño, y sin la intervención de cada una de ellas el daño no hubiese ocurrido, cada causa es una causa próxima. Cuando el acto o negligencia de un tercero concurre con el del culpable original, siendo ambas causas eficientes del daño, la responsabilidad del tercero continúa, y lo mismo ocurre cuando la negligencia del demandado concurre con alguna causa accidental a la cual el demandante no ha contribuído.'' 62 C. J. sec. 39, pág. 1126.

Apliquemos a los hechos y circunstancias del caso de autos la jurisprudencia que acabamos de citar. El automóvil en que viajaba el finado encontró en su camino un primer obstáculo, la novilla de Isidra Orozco. La presencia de ese animal en una carretera pública, suelto y sin una persona que se cuidase de evitar que pudiera causar daño a los que transitaban por la carretera constituye sin duda alguna negligencia por parte del dueño del animal o de la persona encargada de cuidarle. Admitamos, sin resolverlo, que la responsable de la presencia allí y entonces de la novilla lo fué su dueña y no la Central Victoria. El conductor del carro no pudo evitar el choque con la novilla. Prodújose el choque, con resultado fatal para la novilla y sin que ninguna de las nueve personas que iban en el automóvil fuese lesionada.

Pasado ese primer peligro, enderezado el carro y ya bajo el control de su conductor, como veinticinco pies más adelante preséntase un nuevo peligro, otra novilla, esta vez la marcada "C. V.," propiedad de la demandada. Trata el chófer de evitar el choque con el animal, aplica los frenos, cambia la velocidad, resbala el carro en la carretera húmeda y ocurre el accidente en que pierde su vida Andino.

Del récord no aparece que la demandada hiciera el menor esfuerzo para explicar o excusar en alguna forma la presencia de su novilla en una carretera pública a las cuatro de la mañana. Todos sus esfuerzos se dirigieron a inculpar a Isidra Orozco, como si hubiese sido la novilla de ésta y no la de la demandada la causa próxima del fatal accidente. ¿Hubiese ocurrido el accidente si la demandada se hubiese cuidado de evitar que su animal anduviera realengo por la carretera? Seguramente que no. El automóvil, repuesto ya de su primer choque, hubiera seguido su marcha y Andino no hubiese perdido su vida. La negligencia de la demandada fué sin duda alguna la causa próxima del daño.

No erró la corte inferior al resolver que la ley que rige este caso es el artículo 1805 del Código Civil. *Torres v. Dávila,* 47 D.P.R. 315; *Gigante* v. *Álvarez,* 48 D.P.R. 498, 507; *Troche* v. *Matos,* 52 D.P.R. 282; *Osorio* v. *Taboada,* 52 D.P.R. 806. Tampoco erró al declarar probados los hechos alegados en la demanda.

*La sentencia recurrida debe ser confirmada.*

El Juez Asociado Sr. De Jesús no intervino.