DOMINGO GALARZA LUGO y EVA VÁZQUEZ TORRES, demandantes y apelados, *v.* G. LLINÁS & Co., demandada y apelante.

Núm. 10073.—*Sometido:* Febrero 9, 1950. *Resuelto:* Marzo 29, 1950.

*Luis López de Victoria* y *Leopoldo Tormes García,* abogados de la apelante; *R. Atiles Moréu,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Un buey que andaba suelto por una carretera pública, sin estar custodiado por persona alguna, embistió, arrolló y causó lesiones a Eva Vázquez Torres. Alegando que la demandada G. Llinás & Co., sociedad mercantil de Yauco, "era dueña y tenía la posesión inmediata de, y explotaba y utilizaba para su propio beneficio y lucro" dicho buey, Domingo Galarza Lugo y Eva Vázquez Torres, casados entre sí, demandaron

a dicha sociedad en reclamación de los daños sufridos por esta última, los que estimaron en $10,000. Alegaron además que el accidente se debió a la negligencia de la demandada al permitir la presencia del buey en una carretera pública, suelto, sin persona alguna que lo cuidara para evitar que causara daños a los transeúntes.

La demandada en su contestación aceptó un solo hecho de la demanda, el primero, en que se alega la capacidad de las partes, y negó genéricamente todos los demás hechos alegados.

Celebrado el juicio, la corte, después de exponer en su opinión las anteriores alegaciones, llegó entre otras a las siguientes conclusiones de hecho:

"1a. Que los demandantes Domingo Galarza Lugo y Eva Vázquez Torres, son mayores de edad, casados entre sí y vecinos de Yauco, y la demandada G. Llinás & Co., es una sociedad mercantil constituída conforme al Código de Comercio. (Cf. contestación.)

"2a. Que el accidente sufrido por la demandante Eva Vázquez Torres, que motivó la demanda en este caso, *ocurrió tal como se alega en la demanda.*

"3a. Que el buey que embistió y golpeó a la demandante, según se ha dejado establecido en la segunda conclusión precedente, *era propiedad de y estaba en la inmediáta posesión de la demandada,* el día de los hechos. Por la mañana de ese día había formado parte de una boyada que pasó en sentido contrario por el referido sitio, conducida entonces por peones *de la demandada,* y por la tarde, después del accidente, *fué cogido y conducido por peones de la demandada, quienes se lo llevaron en un camión, también propiedad de ésta.*

"4a. Que Jorge Rodríguez, chófer de una guagua, llegó al lugar del accidente, ayudó a Luis Torres a levantar del suelo a la demandante que estaba inconsciente y la condujo en su vehículo *a la casa de Llinás* donde le ordenaron la llevara a casa del Dr. Antonmattei. Este servicio de transportar a la demandante le fué pagado *por Llinás.*

"5a. Que cuando llevó el testigo Rodríguez a la demandante *a la casa de Llinás, don Jorge Llinás le dió a ella diez dólares* para sus gastos; le dijo que pagaría las medicinas que ella necesitara y le dió una orden para la Farmacia Rosario; y no le

cobraron a ella ni las medicinas en el tratamiento a que la sometió el Dr. Antonmattei, por unos ocho días.

"*12a. La demandada negó hechos que le constaban de propio conocimiento, como era la propiedad del buey y su posesión,* el accidente ocurrido así como sus naturales consecuencias de dolor físico y sufrimiento mental y no presentó evidencia alguna para contradecir los daños materiales alegados. Debe condenarse en honorarios de abogado en la cantidad de $125." (Bastardillas nuestras.)

Como primera conclusión de derecho la corte hizo constar lo siguiente:

"*1a. La demandada como dueña y poseedora que era del buey* que ocasionó los daños establecidos a la demandante, *y del cual se servía,* es responsable de los perjuicios ocasionados a la actora. (Art. 1805 Cód. Civ., ed. 1930)." (Bastardillas tras.)

Como consecuencia dictó sentencia condenando a la demandada a pagar a la demandante $445.86 por concepto de daños y perjuicios y $125 de honorarios de abogado, más las costas. No conforme la demandada apeló y en este recurso sostiene que la corte inferior cometió manifiesto error al considerar probado que el buey estaba en posesión de y pertenecía a la demandada G. Llinás & Co. a la fecha del accidente, cuando la prueba de los demandantes sólo tendió a probar alguna relación de dicho buey con Jorge Llinás; que la sentencia es contraria a los hechos y a la ley y que no procedía la imposición de costas y honorarios de abogado a la demandada.

Hemos considerado detenidamente la prueba presentada por los demandantes—la demandada se limitó a presentar por estipulación con los demandantes el informe médico rendido por el Dr. Armando Antonmattei del examen que le hizo a la demandante—y somos de opinión que la corte inferior erró al apreciar dicha prueba y que procede revocar la sentencia. Veamos, en síntesis, lo que declararon los testigos de los demandantes, especialmente en cuanto a quién era el dueño o tenía la posesión del buey.

*Luis Torres Vega* declaró que el 19 de junio de 1948, yendo por la carretera pública de Rancheras de Yauco, como a la una de la tarde, iba también Eva Vázquez Torres detrás de él, cuando vió venir *"un buey de don Jorge, que yo lo conocí porque había subido el ganado por la mañana"* (pág. 4, T. E.) ; que el buey venía "a todo escape" y le dijo a la señora que se echaran a un lado, que el buey le dió a él y lo tumbó y se le fué encima a ella y la pisó; que en ese momento venía Jorge Rodríguez con un vehículo, una guagua, y llevaron a la demandante al pueblo *"en casa de don Jorge"* (ídem). Describió las lesiones que recibió la demandante y luego declaró que el buey siguió por la carretera y al llegar cerca de su casa se hizo un cercadito en la carretera y por fin se metió en un corral de reses y entonces *"de en casa de don Jorge Llinás lo mandaron a buscar* con un peón y un truck" (pág. 7 ídem) ; que por la mañana la boyada que pasó la llevaban *"de en casa de don Jorge* para Rancheras."  (Bastardillas nuestras.)

*Jorge Rodríguez* declaró que ese día él venía en su guagua de Rancheras y un buey le pasó corriendo y él siguió detrás y al llegar al sitio donde había ocurrido el caso, recogió a la demandante que estaba estropeada y como *"sabía que el buey era de en casa de Llinás"*, la condujo *"en casa de Llinás"* (pág. 13 íd.) ; que allí habló "con él mismo . . . el de la oficina, estaba en la oficina, se lo dije, y al decírselo me dijo: 'Llévala en casa del Dr. Antonmattei' " (íd.) ; que cuando él dió "la razón *en casa de Llinás*, mandaron a buscar un *truck*" y cuando fué el *truck*, le hicieron primero una junta para coger el buey, lo achicaron sobre el *truck* y se lo llevaron "los que fueron de en casa de Llinás" (pág. 15 íd.) ; que el viaje *"a la casa de Llinás"* para llevar a la señora se lo pagó *"la casa de Llinás"* (pág. 16 íd.).  (Bastardillas nuestras.)

*Domingo Galarza Lugo*, uno de los demandantes, declaró que cuando le avisaron del accidente, fué *"a casa de Jorge Llinás"* y habló *"con don Jorge"* (pág. 25 íd.) con respecto

a los golpes que había recibido su señora "que la había atro-
pellado un buey *de él*, y *él me dijo* que no me apurara que
la señora mía estaba bien atendida, que *la había* mandado
en casa del Dr. Antonmattei, y que se me atendería"; que
su señora fué curada por dicho médico y las medicinas las
mandó a comprar "a la casa de Llinás" y las pagó *"don Jorge
Llinás"* (pág. 25 íd.), que el doctor no le cobró nada a él
ni pagó las medicinas tampoco; que él "iba a hablar *con don
Jorge* y me decía a mí cómo sigue la paciente. . ." (pág.
27 íd.); que él fué con su señora por la tarde, que ya la
habían curado pues *"la mandó el Sr. Jorge Llinás"*. (Pág.
28 íd.) (Bastardillas nuestras.)

*Eva Vázquez Torres*, demandante, declaró cómo sucedió
el accidente; que la llevaron a curar donde el Dr. Anton-
mattei, quien la curó ocho días; que usaba medicinas que
cogía en casa de Ulises del Rosario, una farmacia, *"por
orden de don Jorge Llinás"* (pág. 33 íd.); que fué a esa far-
macia "Porque *el señor Jorge Llinás* al ir yo allí agolpeada
y *ser por el buey de él, él se hizo responsable* a lo que a mí
me pudiera pasar" (pág. 34 ídem). Que sabe esto "porque
él habló conmigo y con mi esposo ese mismo día" (ídem);
que le dijo no se apurara que la llevaría a curar en casa del
Dr. Antonmattei y que las medicinas se las pagaría; que le
pagó los pasajes de los viajes y le dió diez pesos para que
fuera y viniera; que ella no vió cuando don Jorge Llinás
pagó las medicinas pero que él fué quien la mandó a coger-
las porque si no, no se las hubieran dado; que ella puede
hablar de los bueyes que pasaron por la mañana *"que son de
Jorge Llinás"* porque preguntaron. (Pág. 38 ídem.) (Bas-
tardillas nuestras.)

Esta es toda la prueba que tiende a demostrar de quién
era el buey o tenía su posesión el día en que ocurrió el acci-
dente. En ningún momento testigo alguno dijo que perte-
necía a la demandada G. Llinás & Co. o que ésta lo tenía en
alguna forma bajo su inmediata posesión o que por la mañana
del día del accidente formara parte de una boyada conducida

por peones de la demandada, como hizo constar la corte inferior en su conclusión de hecho tercera. Por el contrario, toda la prueba tendió a demostrar y las declaraciones de Luis Torres Vega, Domingo Galarza Lugo y Eva Vázquez Torres, siendo estos dos últimos los demandantes, demostraron afirmativamente que el buey pertenecía a Jorge Llinás, formaba parte de una boyada de éste y que fué él quien envió a la demandante a curarse, le dió dinero y le pagó las medicinas. Si los propios demandantes y Luis Torres Vega así declararon no comprendemos por qué razón se instituyó esta acción en contra de la sociedad mercantil G. Llinás & Co. El hecho de que Jorge Llinás pueda tener alguna conexión con dicha razón social (y esto no fué probado) no justifica la acción. No puede ser curada la misma de su defecto capital haciendo referencia a las frases aisladas de los testigos al referirse a "en casa de Llinás" para hacerlas aplicables a la razón social G. Llinás & Co., cuando dichos testigos específicamente ya habían declarado que el animal pertenecía a Jorge Llinás y dicha frase tenía que referirse a él.

Los casos de *Osorio* v. *Taboada*, 52 D.P.R. 806, *Andino* v. *Central Victoria, Inc.*, 57 D.P.R. 310 y *Ferrer* v. *Rivera*, 56 D.P.R. 504, interpretativos del artículo 1805 del Código Civil, ed. de 1930, (1) entre otros, citados por la corte inferior, son fácilmente distinguibles del presente. En todos ellos se probó o bien la propiedad o bien la posesión del animal en el demandado, y aun cuando en el de *Osorio* v. *Taboada*, supra, se probó que el perro que causó el daño había salido del establecimiento comercial de M. Taboada & Co.; se sostuvo la demanda contra Manuel Taboada por haberse probado que él estaba en la posesión tanto del establecimiento como del perro. En el caso de autos no se conectó en forma alguna a Jorge Llinás como que él actuó a nombre de la firma

---

(1) El artículo 1805 del Código Civil dispone:
"El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe. Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido."

G. Llinás & Co. para poder hacer a esta firma responsable de los daños causados por el buey.

■■ Como dijimos en el de *Troche* v. *Matos*, 52 D.P.R. 282, 284: "La responsabilidad proveniente de la posesión de un animal es, bajo el derecho civil, bastante seria. No se basa aparentemente en negligencia sino en la mera posesión o servicio." Y véase *Beltrán* v. *Sucn. J. Serrallés*, 70 D.P.R. 86 y casos en él citados. Por tanto, cuando no hay nada en la prueba que lo justifique, no debe, por inferencias, resolverse que se estableció una posesión que no existe. Para que pueda considerarse probado un caso por una inferencia, ésta debe fundarse en un hecho probado legalmente—artículo 461 del Código de Enjuiciamiento Civil—ya que "Es inferencia la deducción que de los hechos probados hace en su discernimiento el juez o jurado, sin que al efecto medie mandato expreso de la ley." Artículo 459 del Código de Enjuiciamiento Civil.

■ Arguyen los apelados que la apelante debió haber alegado en su contestación, como defensa afirmativa bajo la Regla 8 (*c*) de las de Enjuiciamiento Civil, el hecho de quién era el dueño del buey. No tienen razón. Dicha Regla dispone, en lo pertinente, que:

"Al alegar contra una alegación precedente, la parte expresará afirmativamente cualquiera de las siguientes defensas: transacción y pago, arbitraje y adjudicación, asunción de riesgo, negligencia contributiva, exoneración por quiebra, coacción, *estoppel*, falta de causa, fraude, ilegalidad, daños causados por compañero de trabajo, falta de diligencia (*laches*), licencia, pago, exoneración, cosa juzgada, prescripción, renuncia (*waiver*) y cualquiera otra defensa afirmativa. . . ."

Un demandado no está obligado, bajo dicha Regla, a informar hechos al demandante para proteger su causa de acción. Como indican las distintas defensas afirmativas enumeradas en la Regla, éstas se refieren a situaciones que, pudiendo ser el demandado responsable de probarse las alegaciones de la

demanda, alguna de dichas defensas puedan eximirlo de responsabilidad. 2 Moore's *Federal Practice*, 2a. ed., sec. 8.27, págs. 1686–98.

 Correspondía a los demandantes presentar la prueba necesaria para probar las alegaciones de su demanda. Artículo 470 del Código de Enjuiciamiento Civil; *Flores* v. *Torres*, 58 D.P.R. 723; *Abréu* v. *Díaz*, 52 D.P.R. 739; *Sucn. Rivera* v. *G. Godreau & Cía.*, 59 D.P.R. 835. No lo hicieron. No obstante constarles desde el mismo día en que ocurrió el accidente que el buey era de Jorge Llinás y sin tener prueba para demostrar que G. Llinás & Co. tuviera la posesión o se sirviera de dicho animal, prefirieron demandar a dicha firma. No pueden quejarse si su acción no puede prosperar.

*Debe revocarse la sentencia y desestimarse la demanda, con costas.*