LORENZO FERRER, en su carácter de padre con patria potestad sobre su menor hijo ARTURO FERRER, demandante y apelante, *v.* JULIO RIVERA y DELFINA HERNÁNDEZ, demandados y apelados.

Núm. 8021.—*Sometido:* Abril 4, 1940. *Resuelto:* Abril 18, 1940.

---

* NOTA: Véase el prefacio.

*J. C. Rivera,* abogado del apelante; *E. Acosta Domenech,* abogado de los apelados.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Lorenzo Ferrer, en su carácter de padre con patria potestad sobre el menor Arturo Ferrer, instó este pleito en la Corte Municipal de Caguas en reclamación de los daños y perjuicios que alegó haber sufrido dicho menor al ser mordido por un perro propiedad del demandado Julio Rivera. Visto el caso en apelación en la Corte de Distrito de Humacao, se desestimó la demanda y al fundamentar la sentencia el juez de la corte inferior se expresó en los siguientes términos:

"La Corte opina, por la apreciación que pudo hacer del perro, que no se trata de un animal vicioso, feroz y bravo. Es verdad que, tanto la prueba del demandante como la de los demandados, es uniforme en cuanto al hecho de que el niño Arturo Ferrer recibió dos heridas con motivo de una mordedura del perro de Julio Rivera. A juicio nuestro la única cuestión a resolver es si hubo negligencia o no de parte de los demandados en relación con las medidas que pudieron haber tomado para evitar que este perro mordiese a Arturo Ferrer. La costumbre prevaleciente entre nuestros campesinos es la de tener uno de estos animales para la defensa y cuido del hogar y de la propiedad. Por regla general, estos animales son mansos e inofensivos mientras nadie intenta invadir los terrenos o el hogar de su amo. Tan pronto como alguien logra hacerlo, se revela en ellos el instinto feroz, que los lleva a veces a sacrificar sus vidas en la defensa de aquello que, instintivamente, consideran que deben defender. Por el conocimiento que tiene la Corte de cómo

son estos animales, sus costumbres y hábitos, llega a la conclusión de que la teoría de los demandados, o sea, la de que Arturo Ferrer, acompañado de otro niño, corría detrás de una gallina por entre una tala (*sic*) de tabaco, y que en esas condiciones el animal le mordió, atacándole por la espalda, considera que no ha habido culpa o negligencia alguna por parte de los demandados, y que, al suceder los hechos, se debió única y exclusivamente al acto de este niño de meterse en una propiedad ajena en circunstancias naturales, pero no autorizadas por la ley. El niño pudo haber pedido permiso al dueño de la finca para perseguir al animal que era de la propiedad de su padre, e indudablemente no hubiera sucedido lo que aconteció.

"Opina la Corte que el hecho ocurrió dentro de la propiedad de los demandados, que fué un accidente desgraciado, pero que éstos no son, a la luz del derecho, responsables de los daños y perjuicios que recibiera el menor Arturo Ferrer."

██ Los párrafos transcritos de la opinión de la corte inferior claramente demuestran que el juez no tuvo en cuenta la jurisprudencia constante de este tribunal sobre la materia ni el precepto expreso del artículo 1805 del Código Civil (ed. 1930) equivalente al 1905 del español, que literalmente dice así:

"El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe. *Sólo cesará esta responsabilidad en el caso de que el daño proviniere de fuerza mayor o de culpa del que lo hubiese sufrido.*"

De acuerdo con este precepto no es necesario probar negligencia por parte del dueño del animal ni tampoco que éste sea un animal "vicioso, feroz y bravo." La responsabilidad del demandado está predicada en el solo hecho de poseer el animal y solamente constituye una defensa que el daño haya sido causado por fuerza mayor o por culpa del que lo hubiese sufrido.

Interpretando el artículo 1905 del Código Civil español, la Corte Suprema de España, en su sentencia de 19 de octubre de 1909, se expresó en los siguientes términos:

"El artículo 1905 no consiente otra interpretación que la que clara y evidentemente se deriva de sus términos literales, bastando,

según el mismo, que un animal cause perjuicio para que nazca. la responsabilidad del dueño, aun no imputándose a éste ninguna clase de culpas o neglicencia habida, sin duda, cuenta por el legislador de que tal concepto de dueño es suficiente para que arrostre las consecuencias favorables o adversas de esta clase de propiedad, salvo la excepción en el mismo contenida, y esto, ya sean perjuicios inferidos en las cosas, ya con más razón en las personas, por su mayor transcendencia, sin que a ello obste el resultado de la causa criminal, por ser en uno y otro caso distinto el aspecto de la responsabilidad.''

En el caso de *Gigante* v. *Álvarez,* 48 D.P.R. 498, 507, se transcribe con aprobación el siguiente párrafo del notable comentarista del Código Civil español, Sr. Martínez Ruiz, en el que se exponen con claridad los fundamentos en que descansa la responsabilidad impuesta por la ley al dueño del animal. Dice así:

''El que posee o se sirve de un animal para su utilidad o recreo, viene obligado a ejercer sobre él la vigilancia y cuidado necesarios para evitar que cause daño a tercero. Pero no es ésta la consideración que sirve de fundamento al Código para imponer al poseedor del animal la obligación de indemnizar el daño que ocasione, y a la que se refiere el artículo 1905. Por el solo hecho de la posesión presume la ley el consentimiento tácito del poseedor de responder de todas sus consecuencias, ya que no se le oculta a éste la ineficacia relativa al cuidado y vigilancia de seres irracionales. Y en virtud de esta presunción le hace responsable de cuantos perjuicios y daños cause el animal, *aunque se le escape o extravíe*; es decir, aún encontrándose en condiciones que le impidan hacer la vigilancia a que está obligado, cuya falta no es, por consiguiente, la causa de la obligación que contrae de indemnizar el daño. Como se ve por la simple lectura de este artículo, el código ha prescindido de la distinción, que admitían las partidas, entre animales fieros y mansos, siendo, por tanto, igualmente aplicables a unos que a otros la prescripción que este artículo contiene.'' Tomo II, pág. 149.

Véase la interpretación que este tribunal ha dado al artículo 1805 del Código Civil, en los casos de *Torres* v. *Dávila,* 47 D.P.R. 315; *Troche* v. *Matos,* 52 D.P.R. 282; *Osorio* v. *Taboada,* 52 D.P.R. 806, y el más reciente de *De Jesús* v. *Arzuaga,* 53 D.P.R. 522.

■ La prueba es contradictoria con respecto al sitio en que fué mordido el niño. Según los demandantes, el daño fué causado mientras el niño transitaba por un camino vecinal por donde tenía que pasar para llegar a su propia casa. Resulta además de la prueba no controvertida del demandante, que en ocasiones anteriores el perro. había mordido a dos muchachos de la vecindad, de apellido Muñoz, y el propio demandado admitió en su declaración que Lorenzo Ferrer y otras personas le habían aconsejado que amarrase el perro, pero que no lo amarró hasta después de presentarse este pleito.

La prueba de los demandados, consistente en las declaraciones de su yerna María Rivera y su hijo Andrés Rivera, presume que el niño fué mordido cerca de la casa del demandado, declarando la primera de los dos testigos que no vió el momento en que fué mordido y que cuando llegó ella el perro se había marchado del sitio, pero que el niño cayó cerca de la cocina de la casa del demandado. El otro testigo Andrés Rivera, tampoco vió el momento preciso en que el niño fué mordido. Declaró que lo había visto acompañado de otro niño corriendo por una plantación de tabaco y que al llegar a la casa de su padre Julio Rivera encontró al niño mordido por el perro, manifestándole María Rivera que lo había mordido cerca de la casa.

Sea como fuere, ya hubiese sido mordido el niño en el camino vecinal, ya en la finca del demandado, éste, en todo caso, es responsable del daño causado por su perro, pues no existe prueba de que el niño hubiere estado ilegalmente en la finca del demandado ni revela la prueba que el daño fué causado por fuerza mayor o por la culpa del niño. Siendo ello así, el caso no está comprendido en las dos únicas excepciones que determina el artículo 1805 del Código Civil.

La prueba del demandante no fué controvertida en cuanto a los daños sufridos, pero habida cuenta de la naturaleza de las heridas y de que no produjeron incapacidad alguna, estimamos los mismos en la cantidad de $100.

*Procede, por lo expuesto, revocar la sentencia apelada y en su lugar dictar la que debió haber dictado la corte inferior, condenando a los demandados a pagar al demandante, en su carácter de padre con patria potestad sobre el menor Arturo Ferrer, la cantidad de $100, más las costas, sin incluir honorarios de abogado.*

El Juez Asociado Sr. Hutchison está conforme con el resultado.[*]