JUAN SERRANO, demandante y apelante, *v.* NARCISO LÓPEZ, demandado y apelado.

Número 11708.

*Sometido:* 15 de enero de 1957. *Resuelto:* 31 de mayo de 1957.

*Ramón Ferrer Delgado,* abogado del apelante; *José M. Terrasa,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

El día 18 de octubre de 1953, mientras iba por un camino en el Barrio Garrochales de Arecibo, el demandante vió que, dentro de una finca propiedad de Miguel Morales, una vaca

trataba de cornear a un niño. Inmediatamente saltó por encima del alambre, que constituía la guardarraya entre la finca y el camino, para ayudar a defender al menor. Le dió con un palo al animal y éste se viró, lo embistió y le fracturó la tibia y el peroné de la pierna derecha, causándole además contusiones en distintas partes del cuerpo. Invocando las disposiciones del art. 1805 del Código Civil (ed. 1930) (1) y alegando que Narciso López era el dueño del referido animal, el demandante interpuso una demanda por los daños y perjuicios sufridos que fué declarada sin lugar por el tribunal de instancia, en síntesis, a base del siguiente fundamento: "La prueba dejó claramente establecido que el día que ocurrió el accidente (18 de octubre de 1953), si bien es verdad que el demandado Narciso López era dueño de la vaca, no obstante, ésta no estaba en su posesión porque se la había cedido a ganancias a Amado Morales sin que el demandado se estuviera sirviendo de dicho animal para la fecha del accidente".

Ante nos se arguye: *primero*, que Narciso López y Amado Morales eran condueños del referido animal; *segundo*, que el demandado Narciso López se servía de él a la fecha del accidente; y *tercero*, que dicho demandado es responsable de los perjuicios que sufrió el demandante, a tenor de lo dispuesto en el citado art. 1805, pues no existió fuerza mayor ni medió culpa del perjudicado. Luego de analizar los hechos que constan en autos y las normas de derecho aplicables, estamos convencidos de que dichos argumentos carecen de méritos y de que procede confirmar la sentencia objeto de este recurso.

En efecto, como demostró la prueba practicada en el juicio, dos años antes de los sucesos el demandado entregó la vaca que causó los daños a Amado Morales "a ganancias", es decir, en virtud del siguiente contrato: (1) la propiedad

---

(1) Dicho artículo establece que: "El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe. Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido." 31 L.P.R.A. sec. 5144.

del animal siguió siendo el demandado Narciso López; (2) Amado Morales asumió la obligación exclusiva de cuidar, guardar y alimentar dicho animal; (3) las ganancias (a saber, la cantidad que se obtuviera al vender la vaca comparando el precio de ella con su valoración al momento de la entrega) debía distribuirse por mitad entre los contratantes, partiendo también entre ambos el valor de los becerros, pero percibiendo Amado Morales la leche; y (4) el aparcero tenía la posesión y el derecho exclusivo a servirse del animal durante la vigencia del contrato. Se trata pues de un contrato típico de aparcería de ganado que tiene muchas analogías con los contratos de arrendamiento y sociedad, pero que constituye un contrato especial y *sui géneris*. 4 Castán, Derecho Civil Español, (8a. ed. 1956) 594–622; Diccionario de Derecho Privado (1950) 402–406; 10 Planiol y Ripert, Tratado Práctico de Derecho Civil Francés (Trad. Esp.) 1940, 928–942.[2] Por tanto, a la fecha del accidente, Amado Morales tenía la posesión jurídica del animal que causó los daños y era el único que se servía de él, según los términos del referido contrato de aparcería pecuaria con el dueño demandado.

---

[2] Véase además 10 Planiol y Ripert, *Traité Pratique de Droit Civil Francais* (2a ed. 1956) 1032–1044. Nuestro Código Civil sólo se refiere al contrato de aparcería de ganado de cría en su art. 1469, para disponer que el mismo se regirá por las estipulaciones de las partes y por las disposiciones relativas al contrato de sociedad, y en su defecto, por la costumbre de la tierra. Véase *Aragundo* v. *Ramos*, 33 D.P.R. 94 (1924). Como indica Castán, op. cit. 603–604, es ilógica la solución del Código al calificar la aparcería de arrendamiento y someterla por otro lado a las reglas de la sociedad. Por eso "es menester dar a este texto una interpretación amplia, entendiéndose que la construcción de la aparcería . . . está inspirada en criterios mixtos e intermedios" y además "como el Código no dibuja la institución, ni siquiera nos da el concepto de ella, tal vez por entender que pertenece al derecho consuetudinario más que al derecho escrito, y que su contenido y fisionomía pueden ser muy variables, bien podemos admitir que deja a la voluntad de los contratantes o a la costumbre de la tierra la determinación de la medida o predominio que los elementos locativos o asociativos han de tener en cada caso concreto . . ." Por último, señala Castán que los autores y la jurisprudencia del Tribunal Supremo de España han aceptado las anteriores ideas. Véanse, entre otras, las sentencias de 25 de noviembre de 1924 y de 5 de diciembre de 1924, 164 Jur. Civ. 519 y 628 (1924).

Dicho aparcero era el único responsable de la vigilancia del animal y se servía de éste como mejor le convenía, sin estar obligado a recibir ni a cumplir órdenes del dueño sobre ese particular.

Eso basta para que sea inaplicable en el caso de autos la responsabilidad especial que nuestro Código Civil impone al poseedor de un animal, o al que se sirve de él, por los perjuicios que causare a otras personas. En principio, dicha responsabilidad se funda en una presunción de culpa por falta de vigilancia. La persona que tiene la posesión jurídica del animal, o la que se sirve de él, es la única capaz de tomar las precauciones indispensables para evitar cualquier accidente. Sin embargo, esta responsabilidad existe aunque el animal se escape o extravíe y sólo cesa en caso de que el daño provenga de fuerza mayor o de la culpa del perjudicado. *Ferrer* v. *Rivera*, 56 D.P.R. 504 (1940). Así pues, no se trata de una mera presunción procesal de culpa o negligencia, sino de una responsabilidad especial impuesta por ley que ". . . se aproxima o, más bien, penetra en la esfera de la responsabilidad objetiva . . ." 4 Castán, op. cit. 834–835. Aparte de que no es preciso imputar ninguna clase de culpa o negligencia al poseedor del animal, o a la persona que se sirve de él, la exoneración sólo se produce si se hubiese dado una de las dos excepciones apuntadas, que deben ser probadas por quien las alega en su descargo. Véanse las sentencias del Tribunal Supremo de España de 19 de octubre de 1909 (116 Jur. Civ. 120) y de 23 de diciembre de 1952 (40 Jur. Civ. 2a. s., 1066).

Por otro lado, la responsabilidad no se limita a los animales nocivos o peligrosos, sino que los incluye a todos sin distinción. Tampoco se limita a una conducta o actividad peligrosa por razón del uso que se hace del animal. Y el supuesto liberatorio de la *"fuerza mayor"* se extiende al caso en que el animal ha sido robado y también al caso en que un empleado del poseedor lo usa para fines que están fuera de las atribuciones de su empleo. *Colón* v. *Pérez*, 27 D.P.R. 748

(1919). [3]   De ahí que, a nuestro juicio, es inaceptable una teoría estrictamente objetiva para explicar la responsabilidad que establece el citado art. 1805, ya que la misma no se funda únicamente en la necesidad social de indemnizar a los que sufren daños como consecuencia de los riesgos inherentes a una conducta o actividad peligrosa, y, sin embargo, permitida. [4]   El fundamento racional del art. 1805 es una presunción de responsabilidad que surge del derecho de dirección y control del animal que tiene el poseedor, o la persona que se sirve de él, y del deber correlativo de ejercitarlo con las debidas precauciones para evitar daño a otras personas.   12 Manresa, Código Civil Español (5a ed., 1951) 673–686; 6 Planiol y Ripert, Tratado Práctico de Derecho Civil Francés (Trad. Esp.) 819–830; 3 Colin y Capitant, Curso Elemental de Derecho Civil (3a ed. esp., 1951) 869–873. [5]

En la práctica casi siempre es fácil determinar sobre quién recae dicha responsabilidad.   La posesión jurídica generalmente la tiene el dueño y éste es también el que de ordinario se sirve del animal.   *Redinger v. Crespo*, 18 D.P.R. 108 (1912); *Torres v. Dávila*, 47 D.P.R. 315 (1934); *Ferrer v. Rivera*, 56 D.P.R. 504 (1940); *Galarza v. G. Llinás & Co.,*

[3] Por supuesto, en esos casos el poseedor podría ser responsable del daño bajo el art. 1802, por culpa o negligencia probada *in vigilando* o *in eligendo;* por ejemplo, si le confía el animal a un empleado irresponsable, o si por cualquier otra causa pudo prever o evitar el accidente.

[4] Sin embargo, véanse Puig Brutau, Fundamentos de Derecho Civil, Tomo II, Vol. 2, págs. 671–681, 693–695 (1950); Puig Peña, Tratado de Derecho Civil Español, Tomo IV, Vol. 2, págs. 580–581 (1951).   Dicha teoría estricta concuerda mejor con las reglas prevalecientes en el derecho angloamericano.   Véanse Prosser, *Handbook of the Law of Torts*, (2a ed., 1955) 315–349; 2 Harper y James, *The Law of Torts* (1956) 785–870. Cf. Pound, *An Introduction to the Philosophy of Law* (ed. rev. 1954) 72–106 y Seavey, *Principles of Torts*, 56 Harv. L. Rev. 72 (1942).

[5] Véanse además: Colombo, Culpa Aquiliana, (1944) 512–528; 2 Mazeaud y Mazeaud, *Traité Theorique et Pratique de la Responsabilité Civile* (4a ed., 1949) 46–88; 1 Savatier, *Traité de la Responsabilité Civile* (2a ed., 1951) 511–523; Lawson, *Negligence in the Civil Law* (1950) 36–50; 6 Planiol y Ripert, *Traité Pratique de Droit Civil Francais* (2a ed., 1951) 833–922; 2 Mazeaud, *Lecons de Droit Civil* (1956) 441–507; 2 Ripert y Boulanger, *Traité Elementaire de Droit Civil de Planiol* (2a ed. 1947) 310–317, 359–376.

71 D.P.R. 111 (1950). La responsabilidad del propietario subsiste (1) aunque haya entregado la guarda material del animal a un empleado, y (2) aunque se sirva del animal por medio de un empleado. *De Jesús* v. *Arzuaga*, 53 D.P.R. 522 (1938); Puig Peña, op. cit., 581. Sin embargo, el dueño puede entregar efectivamente el animal para que otro se sirva de él: mediante arrendamiento, préstamo, contrato de aparcería, etcétera. En tal caso, es el arrendatario, el prestatario o el aparcero la única persona que de ordinario posee y se sirve del animal. Por tanto, aunque siga obteniendo un provecho económico del animal, el dueño no puede ser declarado responsable a tenor del art. 1805. Sólo podría ser declarado responsable si se prueba su culpa o negligencia, según dispone el art. 1802 del Código Civil (ed. 1930). Véanse 12 Manresa, Código Civil Español (5a. ed., 1951) 673 y sigtes.; Borrell Maciá, Responsabilidades Derivadas de Culpa Extracontractual Civil, (1942) 203–212; 6 Planiol y Ripert, Tratado Práctico de Derecho Civil Francés (Trad. Esp.) 819–830; Colombo, op. cit., 514, 515; 2 Mazeaud y Mazeaud, op. cit., 46–88.

Esta solución se ajusta a los términos literales del art. 1805 y se inspira en la idea de que la responsabilidad por los daños causados por los animales tiene como fundamento más bien el deber de la guarda y vigilancia de los mismos que el provecho económico que puede obtenerse de ellos. Por supuesto, bajo el art. 1805, no es necesario probar que el demandado es el dueño del animal que causó los daños si lo tenía en su posesión (*Vélez* v. *Orosco*, 59 D.P.R. 518) o si se servía del mismo (*Ruiz* v. *Solís*, 61 D.P.R. 815). Por otro lado, debe tenerse presente que la responsabilidad del poseedor y la del que se sirve del animal no se acumulan, sino que son separadas y alternativas. Puig Peña, op. cit., 581; 6 Planiol y Ripert, op. cit., 820–821. El poseedor (por cualquier título) puede no tener al animal bajo su guarda al ocurrir el accidente porque otra persona se esté sirviendo de él. En esa hipótesis sólo es responsable, bajo el art. 1805,

el que se sirve del animal aunque la víctima podría demostrar que el poseedor incurrió en culpa que causó el perjuicio, fundando entonces su acción en el art. 1802: por ejemplo, que entregó un animal vicioso sin advertir que era preciso . tomar precauciones especiales para evitar daños a terceras personas. Véanse 2 Mazeaud y Mazeaud, op. cit., 50–51; Colombo, op. cit., 515. Estas reglas concuerdan con los términos del art. 1805, que impone la presunción de responsabilidad sobre "el poseedor . . . , o el que se sirva de él . . .", y además con la noción esencial de que el fundamento de la misma es el deber de la guarda y vigilancia del animal, ya que la idea del beneficio o de la ganancia económica induciría a la acumulación de la responsabilidad.

Basta lo indicado para demostrar que, dadas las circunstancias concurrentes, la presunción de responsabilidad del art. 1805 no recae sobre el dueño del animal, que es el único demandado en este pleito. Sólo hubiera podido invocarse contra el aparcero, siendo éste la única persona que a la fecha del accidente (1) poseía el animal, y (2) se servía de éste. Por consiguiente, es innecesario resolver si el daño provino o no de la *culpa* del perjudicado. Pero conviene notar aquí que, interpretando el art. 1385 del Código Civil Francés [6] correspondiente al 1805 de nuestro Código, la doctrina y la jurisprudencia en Francia aceptan unánimemente que el acto de abnegación o sacrificio de una persona, que se arriesga para salvar a otra de los daños que pudiera causarle un animal, no constituye *culpa* o *falta* si su intervención era el único medio aparente de salvar a la otra persona de un peligro grave. [6a] Y el que así trata de suprimir un serio peligro

---

[6] Dicho artículo dispone lo siguiente: "El propietario de un animal o aquel que se sirve de él, mientras lo usa, es responsable del daño que el animal haya causado, ya estuviese bajo su guarda, ya estuviese perdido o escapado". Las excepciones de fuerza mayor y culpa del lesionado se injertaron sin vacilación por las cortes y los autores. Al respecto, véase entre otros, Colin y Capitant, op. cit., 869–873.

[6a] El principio antes aludido es hasta cierto punto análogo al que hemos adoptado del derecho común, al aplicar en ciertos casos la fórmula de que "el peligro invita al rescate", para determinar la relación causal

provocado por un animal tampoco incurre en *culpa* por el mero hecho de entrar sin permiso en propiedad ajena. En otros términos, no se le puede clasificar como un "transgresor" que no tiene derecho a invocar la responsabilidad especial que impone la ley por los daños causados por los animales. 2 Mazeaud y Mazeaud, op. cit., 421–424; 1 Savatier, op. cit., 127–129; Colombo, Culpa Aquiliana (1944) 525–526. Cf. *Troche* v. *Matos*, 52 D.P.R. 282 (1937) y *Ferrer* v. *Rivera*, 56 D.P.R. 504 (1940).(7) En rigor, debemos indicar por último que, según las pruebas practicadas, el dueño demandado aquí no incurrió en culpa o negligencia de clase alguna, por lo cual no es responsable de conformidad con lo dispuesto en el art. 1802.

*Por las razones expuestas, debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Marrero no intervino.

---

entre un acto culposo o negligente y el daño sufrido por la persona que trata de rescatar a otra del peligro que surge de dicho acto. Véanse *Arroyo* v. *Caldas*, 68 D.P.R. 689, 694 (1948); Prosser, *Handbook of the Law of Torts* (2a ed., 1955) 270–272 y los casos allí citados; 2 Harper y James, *The Law of Torts* (1956) 1167–1168. Por supuesto, una conducta temeraria, es decir, irrazonablemente arriesgada aún tomando en cuenta la gravedad del peligro que corre la otra persona, podría constituir culpa o falta a tenor del artículo 1805.

(7) La finca de caña donde pastaba la vaca el día de los hechos era propiedad del padre del aparcero y la prueba no demostró si el niño que fué atacado por el animal tenía o no permiso para entrar en dicha finca. Sólo se probó que el referido menor había ido allí a recoger yerba para unos puercos, y que desde muchos años antes acostumbraba recoger yerba en ese sitio. Aquí el demandado no hubiese podido, de todos modos, invocar la inmunidad que en ciertas circunstancias se reconoce al poseedor de una propiedad por daños causados a un "transgresor". Dicha inmunidad no se extiende a terceras personas que ni son agentes o empleados del poseedor ni trabajan para él. Prosser, *Handbook of the Law of Torts* (2a ed., 1955) 434–435 y los casos allí citados; 2 Harper y James, *The Law of Torts* (1956) 1433–1444.