Jesús Manuel Santos, demandante y recurrente, *v.* Rafael Ramos Cobián y Citizens Casualty Company, demandados y recurridos.

Número: 65   Resuelto: 26 de febrero de 1963

*P. Roldán Figueroa* y *Daisy Ruiz de Roldán,* abogados del recurrente; *Germán Rieckehoff, Ramón H. Vargas* y *Elí B. Arroyo,* abogados de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El día 6 de enero de 1958 el recurrente Jesús Manuel Santos, un menor de catorce años de edad, se dirigió al Hotel "El Rancho", propiedad del recurrido Rafael Ramos Cobián y alquiló un caballo de éste por una hora pagando la suma de $2.00. A los diez minutos de estar el menor disfrutando del paseo a caballo, y mientras se desmontaba para cruzar una zanja, el animal lo tumbó y le mordió dos veces en la espalda. Recibió atención médica en el Hospital Municipal de Aguas Buenas, en el Hospital Municipal de Caguas y luego en la Clínica San Rafael. Como consecuencia de las lesiones sufridas en el referido accidente el menor recurrente dejó de asistir a la escuela por una semana, tuvo que guardar cama por varios días, sin poder mover un brazo por tres días. Sufrió una leve infección en la región afectada que le produjo intenso dolor. Las mordidas le produjeron una inflamación que se prolongó por dos semanas. Como resultado, el recurrente presenta una cicatriz. El Tribunal de Distrito, Sala de Caguas, estimó en mil dólares los daños físicos y mentales ocasionados al recurrente en la forma previamente relacionada. Sin embargo, dicho tribunal dictó sentencia declarando sin lugar la demanda por considerar de estricta aplicación al caso la doctrina expresada en *Serrano* v. *López*, 79 D.P.R. 979 (1957). Apelada al Tribunal Superior, Sala de Caguas, éste confirmó dicha sentencia, resolviendo que:

"Considera este Tribunal que la responsabilidad civil que establece el referido artículo [artículo 1805 del Código Civil, ed. 1930—31 L.P.R.A. sec. 5144] pesa sobre el propietario o sobre quien se sirve de un animal, en beneficio o protección de una tercera persona distinta a éstos. Es evidente que la obligación está predicada en una forma disyuntiva o en la alternativa, de manera que cesa la responsabilidad del propietario cuando comienza la del usuario.

No hay duda en cuanto a que el demandante en el momento del accidente se estaba sirviendo del caballo perteneciente a la

parte demandada. No tiene relevancia la circunstancia de que el propietario estuviese también serviéndose del animal en la forma indirecta que el artículo presupone. Al ceder el dueño el control y dirección del animal a quien lo alquiló hizo desaparecer la vinculación que produce la responsabilidad señalada por el artículo transcrito, aun cuando siguiera circunstancialmente aprovechándose del cuadrúpedo.

Si el propietario deja de ser responsable bajo este artículo hacia los demás cuando cede el aprovechamiento del animal, no debe haber duda de que también cesa su responsabilidad bajo esta disposición de ley, respecto a quién obtiene el disfrute y el uso del referido animal."

No conforme con dicha sentencia, el recurrente ha incoado este recurso de certiorari sosteniendo que el tribunal de instancia cometió tres errores de derecho: 1) al interpretar el Art. 1805 del Código Civil "en el sentido de que el que se sirvió del animal era el propio demandante"; 2) al concluir que existía un contrato de arrendamiento entre el demandante y el demandado bajo el Art. 1432 del Código Civil; y 3) al concluir como cuestión de derecho que las alegaciones y la prueba no sostenían la reclamación bajo ninguna teoría de derecho.

Como no existe prueba alguna en el récord de este caso demostrativa de la culpa o negligencia del recurrido dueño del caballo en cuestión, (Art. 1802 del Código Civil—31 L.P.R.A. sec. 5141—), o de que el dueño y arrendador conocía los vicios o defectos del animal y no los manifestó al comprador (Art. 1443 y 1375 del Código Civil—31 L.P.R.A. secs. 4038 y 3843—), necesariamente la reclamación sólo puede sostenerse bajo las disposiciones del Art. 1805 del Código Civil—31 L.P.R.A. sec. 5144—, el cual lee así:

"El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe. Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido."

En el caso de *Serrano* dijimos: "En principio, dicha responsabilidad [la provista bajo el referido artículo 1805] se funda en una presunción de culpa por falta de vigilancia", y añadimos que el fundamento racional del citado artículo es una presunción de responsabilidad que surge del derecho de dirección y control del animal que tiene el poseedor, o la persona que se sirve de él, y del deber correlativo de ejercitarlo con las debidas precauciones para evitar daño a otras personas. Citamos, además, la jurisprudencia de este Tribunal y comentarios de tratadistas al efecto de que la responsabilidad del dueño subsiste cuando le haya entregado la guarda material del animal a un empleado y aunque se sirva del animal por medio de éste, pero cesa cuando entrega efectivamente el animal para que otro se sirva de él como ocurre en los casos de arrendamiento, préstamo, aparcería, etc., o cuando le cede la posesión del animal a otro.

Borrel Macía, en la reedición en 1958 de su obra titulada *Responsabilidades Derivadas de Culpa Extracontractual Civil*, págs. 282–285, añade que cuando la responsabilidad se ventila entre el propietario y las personas que cuidan temporalmente del animal, mediante retribución, tales como el mesonero o veterinario, aquél no debe responder del daño que el animal le causa a éstos "ya que se trata . . . de un daño causado cumpliendo un contrato . . . y son percances del oficio. . ." Pero sí debe responder del daño que le cause a terceros ya que no puede considerarse que el mesonero o veterinario se sirven del animal. El mismo resultado debe obtenerse cuando se trata de aquél que de manera espontánea se convierte en guardián sin retribución como el que recoge el animal fugitivo.

Las sentencias del Tribunal Supremo de España, de 19 de octubre de 1909 (116 Jur. Civ. 120) y 23 de diciembre de 1952 (40 Jur. Civ., Nueva Serie, 1066) afirman, de acuerdo con las disposiciones del Art. 1905 del Código Civil Español, equivalente al 1805 del nuestro, que la res-

ponsabilidad del dueño de un animal por los perjuicios que éste cause surge aunque no se le impute culpa o negligencia a aquél. Señala Borrel Macía en su citada obra que en estos casos existe una presunción *juris et de jure*, y que, por consiguiente, ello impide al dueño del animal demostrar la ausencia de su culpa o negligencia.

En el caso de *Serrano*, se trataba de determinar la responsabilidad por los daños causados por una vaca que embistió y le fracturó la tibia y el peroné de la pierna derecha a una persona que saltó un alambre, que constituia la guardarraya entre la finca de otra persona y un camino, para salvar a un niño de ser corneado por dicha vaca. Se resolvió que el dueño del animal no era responsable porque desde hacía dos años la posesión de la vaca había sido cedida al dueño de la finca quien se servía de ella de acuerdo a un contrato bajo el cual el dueño del animal retuvo la propiedad del mismo, pero el dueño de la finca asumió la obligación de cuidarlo, guardarlo y alimentarlo y el derecho exclusivo de posesión y de servirse de él y sólo en el caso de venderse era que la ganancia debía distribuirse por mitad entre los contratantes.

Se alega por el recurrente que la doctrina sentada en el caso de *Serrano*, no constituye fundamento alguno para resolver el caso ante nos porque las circunstancias de uno y otro caso son distintas ya que a) el caballo en el caso de autos sólo estuvo unos minutos bajo el cuidado del menor mientras que en el de *Serrano* el animal estuvo dos años bajo el cuidado y custodia del dueño de la finca; b) el menor no asumió obligación alguna de cuidar y guardar al animal, obligación que asumió por contrato el dueño de la finca en el caso de *Serrano;* c) en el caso ante nos, el perjudicado era un menor y, por lo tanto, no podía existir relación contractual alguna entre él y el dueño del caballo mientras que en el caso de *Serrano*, los derechos y obligaciones de las partes se regían por las disposiciones de un contrato celebrado por

las partes y en vigor al ocurrir el incidente que motivó la reclamación; d) el menor no obtenía ganancia alguna del caballo que montaba, contrario a los hechos en el caso de *Serrano* en que el dueño de la finca sí la obtenía; y, por último, e) en el caso que nos ocupa el lesionado fue el menor mientras que en el de *Serrano* fue un tercero.

■ Convenimos que en los casos, como en el de *Serrano*, en que se responsabilizó por los daños causados por un animal a una persona que no era su dueño se trataba de alguien que había gozado de la posesión del animal por largo tiempo o que se servía del mismo para su provecho económico, o para su conveniencia como en el caso del perro que sirve de guardián de una propiedad—*Ruiz* v. *Solís*, 61 D.P.R. 815 (1943). El servirse de un animal puede incluir por supuesto el servirse de él para fines de recreo. Pero implícito, tanto en la posesión del animal por persona que no es su dueño como en el hecho de servirse de él, existe, y así lo determinamos, un elemento de frecuencia, continuidad, duración, de estado, que ciertamente no existía en el caso de autos en que el menor recurrente, en el momento del accidente, usaba el caballo por mero permiso u autorización, mediante paga y para el recreo accidental de una ocasión y por término breve, de minutos. A nuestro juicio, en las circunstancias de este caso el recurrente no era el poseedor o el usuario a que se refiere el Art. 1805 del Código Civil, siéndolo, bajo los hechos específicos del caso ante nos, el recurrido Ramos Cobián, quien poseía y explotaba el negocio de contratar, o como en el caso de autos, autorizar, el uso de caballos para paseo, mediante paga.

Arguyen los recurridos que el recurrente era un huésped del Hotel El Rancho y que por lo tanto no puede recobrar en esta acción en ausencia de prueba de la falta o negligencia del hostelero, pues así lo dispone la Sec. 4 de la Ley de Hosteleros, Ley Núm. 85 de 23 de junio de 1956 —10

L.P.R.A. sec. 714 (Supl. 1961).([1])    Se alega que el recurrente era huésped de dicho hotel porque disfrutaba de una de las facilidades de recreación y diversión del mismo en el momento en que ocurrió el incidente en discusión.    La referida Ley de Hosteleros incluye bajo el concepto de huésped, entre otras personas, a aquélla "que se encuentra en el predio de un hotel con el propósito de disfrutar de las facilidades de recreación y diversión provistas, tales como restaurantes, piscinas, barras, tiendas y establecimientos similares."    Sec. 13(d)  de la Ley de Hosteleros —10 L.P.R.A. sec. 711(d) (Supl. 1961).

■ No creemos que la Ley de Hosteleros es aplicable, pues el recurrente no era un huésped del hotel en cuestión ya que en el momento del accidente ni se encontraba "en el predio" del hotel, ni disfrutaba de una de las facilidades enumeradas o similares a las enumeradas en la Sec. 13(d) de dicho estatuto.    Es de aplicación a esta situación el principio de *noscitur a sociis*, *El Pueblo* v. *Benítez, et al.*, 19 D.P.R. 246 (1913), cita precisa a la página 255, así como el principio de *inclusio unius est, exclusio alterius*, *Salgado* v. *Comisión Hípica Insular*, 49 D.P.R. 464 (1936), cita precisa a la página 466.

*Siendo responsable el recurrido según hemos expuesto, se revocará la sentencia del Tribunal Superior, Sala de Caguas, que a su vez confirma la del Tribunal de Distrito, Sala de Caguas, y en su lugar se dictará otra condenando a los recurridos a pagar al recurrente la suma de mil dólares por concepto de daños y perjuicios, más las costas del litigio.*

([1]) Dicha Sec. 4 de la Ley de Hosteleros dispone lo siguiente:

"Excepto por lo dispuesto en las secs. 712 y 713 de este título, ningún hostelero será responsable a ningún huésped por la pérdida de cualquier propiedad que haya sido traída o dejada por él en cualquier predio del hotel administrado por dicho hostelero, ni por la destrucción o daños sufridos por la misma;   y no será responsable en ningún caso a ningún huésped por ninguna pérdida o daño ocasionado como resultado de fuego, turbonada o cualquier otro suceso casual, o como resultado de cualquier acto, omisión o suceso no atribuible a la falta o negligencia del hostelero."