Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| GLADYS DEL VALLE VEGA, Y OTROS<br><br>Apelantes<br><br>v.<br><br>WALMART DE PUERTO RICO, INC., Y OTROS<br><br>Apelados | KLAN202200960 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil núm.: CG2020CV01961 (703)<br><br>Sobre: Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 31 de enero de 2023.

Comparece ante este tribunal apelativo la Sra. Gladys Del Valle Vega, el Sr. Roberto Ríos Claudio y la Sociedad Legal de Gananciales compuesta por ambos, (en adelante el matrimonio Ríos-Del Valle o los apelantes) mediante el recurso de apelación de epígrafe solicitándonos que revoquemos la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI) el 11 de octubre de 2022, archivada en autos al día siguiente. Mediante este dictamen, el foro primario declaro *Ha Lugar* a la solicitud de sentencia sumaria presentada por Walmart de Puerto Rico (en adelante Walmart o la apelada).

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

### I.

El 22 de septiembre de 2020 el matrimonio Ríos-Del Valle presentó la demanda de epígrafe. Alegaron que el 3 de agosto de 2020 acudieron a la tienda Walmart en Caguas donde la Sra. Gladys Del Valle Vega (en adelante la señora Del Valle Vega) sufrió una

caída al ser golpeada por un carrito de bebé manejado por otra clienta nombrada como Fulana de Tal. Además, se adujo que Walmart fue negligente al violentar la Orden Ejecutiva emitida por el Gobierno de Puerto Rico como medida preventiva ante la pandemia provocada por el Covid-19 permitiendo en su local más personas de las autorizadas en el decreto. Señaló que, como resultado de la negligencia de las partes demandadas, esta sufrió una fractura en el fémur de su pierna izquierda. El matrimonio Ríos-Del Valle valoró sus daños en $176,200.

El 2 de marzo de 2020 Walmart contestó la demanda negando el incumplimiento de la Orden Ejecutiva. Admitió que el matrimonio Ríos-Del Valle visitó la tienda y que hubo un choque entre la señora Del Valle Vega con otra clienta que empujaba un coche de bebé mientras discurrían por el pasillo principal. Entre las defensas afirmativas alegó no ser un garantizador absoluto y que la causa próxima fue la negligencia de la clienta que manejaba el coche de bebé.

El descubrimiento de prueba culminó el 31 de diciembre de 2021. Posteriormente se llevó a cabo la conferencia con antelación a juicio. El 8 de febrero de 2022 las partes presentaron una moción estipulando ocho (8) hechos entre ellos: (a) **que el incidente fue captado por dos cámaras de seguridad de la tienda**; (b) hubo un choque entre la Sra. Gladys Del Valle y **un coche de bebé empujado por una cliente**; (c) la señora cayó al piso y comenzó a quejarse, a gritar y a llorar del dolor que tenía en su pierna izquierda; y (d) **el incidente ocurrió en la intersección de un pasillo principal con un pasillo lateral**.[1]

---

[1] Véase el Apéndice del Recurso, a la pág. 3, renumerado a la pág. 152.

El 22 de febrero de 2022 Walmart presentó una *Moción de Sentencia Sumaria*. En la referida moción propuso los siguientes veintinueve (29) hechos como incontrovertidos:[2]

1. Que el 3 de agosto de 2020, los Demandantes acudieron a la tienda Walmart de Caguas a realizar compras.

2. A eso de las 9:24am la Co-Demandante sufrió una caída en la tienda Walmart Supercenter de Caguas.

3. **El incidente, que fue captado por dos cámaras de seguridad de la tienda**.

4. El incidente ocurrió en la intersección de un pasillo principal con un pasillo lateral.

5. **La caída fue como resultado de un choque entre la Co-Demandante y un coche de bebé empujado por una cliente**.

6. Al momento de incidente el área del incidente en el pasillo estaba despejada.

7. Se observa a la Co-Demandante caminando por un pasillo lateral (lado derecho) hacia el pasillo principal.

8. Cuando la Co-Demandante está entrando del pasillo lateral al pasillo principal tiene su cabeza girada hacia la izquierda.

9. Seguido se observa a un coche de bebé venir por el pasillo principal por el lado derecho de la Co-Demandante.

10. La clienta está empujando el coche y a la misma vez mirando hacia su derecha en dirección a un carro de compras que le sigue.

11. Entonces, **más a menos a mitad de pasillo, la Co-Demandante impacta la esquina delantera izquierda del coche con su pierna derecha cayendo al piso sobre su lado izquierdo**.

12. **La Co-Demandante no vio el coche venir**.

13. **El coche de bebé lo empujaba una cliente**.

14. El coche de bebé no era empujado por un empleado de la demandada.

15. Cuando la Co-Demandante cayó al piso comenzó a quejarse, gritar y a llorar del dolor que tenía en su pierna izquierda.

16. Luego que cayó al piso **varios clientes movieron, enderezaron, y acomodaron a la Co-Demandante en el piso**.

17. **El Co-Demandante levantó a la Co-Demandante del piso y fue asistido por un empleado de la tienda a sentarla en un carro eléctrico de impedidos**.

18. Los paramédicos **movieron en brinquitos** a la Co-Demandante del carro eléctrico a la camilla.

19. La Co-Demandante escribió en su relato que pasaba por la góndola de comforter y al llegar al pasillo principal **tropezó con la rueda del coche de bebé** de una cliente que pasaba en ese momento **y se cayó al piso**.

20. La cliente Neisha Torres escribió en su relato: "yo bajaba por el pasillo de juguetes y la cliente venía saliendo de la góndola y tropezó con el coche."

21. En el informe de incidente el Asistente de Gerente Julio Torres describió el incidente de la siguiente manera: "clienta tropezó con el coche de bebé de otra cliente, e identificó la causa del incidente como: Cliente/miembro.

---

[2] *Íd.*, a las págs. 51-55. [Énfasis Nuestro]

22. El Gerente General de la tienda Luis O. Pérez Figueroa, estaba caminando la tienda cuando se encontró con la escena del incidente.

23. El coche de bebé no era propiedad de la Demandada o fue provisto por la Demandada a la clienta. **La tienda no provee coches para uso por los clientes**.

24. La Co-Demandante admitió que no sabe cómo el haber [alegadamente] permitido la entrada de clientes a la tienda sin ningún tipo de control o restricción de capacidad contribuyó o tuvo que ver con el accidente.

25**. El Co-Demandante admitió que la cantidad de gente que había en la tienda y las medidas del COVID no tuvieron nada que ver con el incidente. No van al caso**.

26. La Co-demandante fue transportada en ambulancia a HIMA, donde fue diagnosticada con una fractura intertrocantérica del fémur izquierdo, fue operada, y luego recibió terapia física.

27. Referente a las lesiones físicas resultantes de la caída relatada por la Co-Demandante a ambos peritos, éstos coinciden en el diagnóstico y tratamiento.

28. El Dr. Fausto Boria, fisiatra, le dio a la Co-Demandante un 2% de impedimento las funciones fisiológicas generales y el Dr. Orlando Fernández, cirujano ortopeda, le dio un 3% de impedimento las funciones fisiológicas generales por la fractura intertrocantérica del fémur izquierdo.

29. **Ninguno de los peritos hace una determinación de causalidad o agravación de la fractura del fémur izquierdo en sus informes periciales**.

Según surge del expediente electrónico dicha moción **fue acompañada con catorce (14) exhibits** denominados desde la A hasta la L. Entre ellos, el Exhibit D-0 a D-21 que son tomas del video y el Exhibit D es un USB que contiene los videos.[3] En esencia, Walmart argumentó que los apelantes no tienen prueba alguna para demostrar sus alegaciones y que la causa próxima de la negligencia fue de la propia apelante, la Sr. Gladys del Valle y de la otra clienta las cuales "distraídas, no poniendo atención por donde caminaban y mirando en direcciones opuestas ..." chocan y resulta en la factura.[4] Además, señalaron que el matrimonio Ríos-Del Valle admitió que las medidas cautelares del COVID no tuvieron nada que ver con el incidente, y también que no pueden establecer cómo es que contribuyeron o tuvieron que ver con el incidente. Por otro lado,

---

[3] Destacamos que la parte apelante presentó el Apéndice del Recurso el 15 de diciembre de 2022, según fuese ordenado en nuestra *Resolución* del 6 de diciembre. Sin embargo, **no acompañó todos los anejos incluidos por la parte apelada en su solicitud de sentencia sumaria**. El Apéndice solo incluyó los Exhibits E, G, H, I, y J. El Exhibit D y las tomas del video D-0 a D-21 fueron acompañadas por la parte apelada en el apéndice de su alegato.

[4] Véase el Apéndice del Recurso, a la pág. 62.

indicó que "[l]os informes de ambos peritos relacionan la fractura del fémur con la caída, y no hacen determinación si los actos de manipular o levantarla del piso agravó o causó la fractura."[5]

El 22 de abril de 2022 el matrimonio Ríos-Del Valle presentó su *Oposición a Sentencia Sumaria* en la cual reitera que existe controversia en cuanto al hecho de si "al levantar a la Co-Demandante del piso se pudo haber agravado la fractura del fémur izquierdo causada por el impacto al caer al piso o la agravó."[6] La moción fue acompañada con extractos de la deposición tomada al Sr. Roberto Ríos Claudio. Estos argumentaron que de su testimonio surge que "una vez la demandante cae al piso el gerente de la tienda ordena a su empleado y al co-demandante a levantar a la demandante sin esperar por los paramédicos. Sin la autorización de la actora, y con la objeción del actor, el empleado levanta a la demandante 28 pulgadas del piso por la rodilla y la coloca en una silla eléctrica. Ese hecho **pudo haber fracturado** la rodilla de la demandante o agravado el daño acaecido."[7] A su vez, para controvertir los veintinueve (29) hechos propuestos Walmart, los apelantes solo exponen que:[8]

> Dicha argumentación es una falacia, es inocua, in sustancia e impertinente a la controversia aquí en cuestión. LO AQUÍ EXPUESTO NO CONSTITUYE UN HECHO ESENCIAL Y MATERIAL PARA DIRIMIR SI WALMART ES RESPONSABLE POR LAS ACTUACIONES DE SUS EMPLEADOS "al levantar a la Co-Demandante del piso se pudo haber agravado la fractura del fémur izquierdo causada por el impacto al caer al piso o la agravó". PEOR AÚN, LA PRUEBA DEMUESTRA LO CONTRARIO.

Las partes también presentaron sus respectivas réplicas y dúplicas.

Analizadas las mociones; así como la prueba acompañada en los escritos, el TPI declaró *Ha Lugar* a la solicitud de sentencia

---

[5] *Íd.*, a la pág. 65.
[6] *Íd.*, a la pág. 85.
[7] *Íd.*, a la pág. 115. [Énfasis nuestro]
[8] *Íd.*, a las págs. 87-109.

sumaria presentada. En consecuencia, el foro primario dictó la *Sentencia* apelada en la cual consignó como hechos que no están en controversia, los veintinueve (29) hechos propuestos por Walmart. A su vez, concluyó que:[9]

> …
>
> Habiendo culminado el descubrimiento de prueba en el presente caso y aprobado el informe de Conferencia y conforme los hechos incontrovertidos **la parte demandante no cuenta con prueba para establecer la causalidad y negligencia de la parte demandada conforme alegado**. Veamos.
>
> Con relación a la negligencia por no cumplir con los protocolos del Covid de los hechos no controvertidos por la parte demandante surge que **los propios demandantes admitieron** que las medidas cautelares del Covid no tuvieron **nada que ver con el incidente** y que ni pueden establecer cómo es que contribuyeron o tuvieron que ver con el incidente. La parte demandante no cuenta con prueba para establecer la violación de los protocolos del Covid y/o causalidad. Tampoco existe controversia en cuanto a que no existía condición peligrosa o conocimiento de peligrosidad por lo cual imputar negligencia a la demandada.
>
> Con relación a la fractura o agravación de la fractura del fémur por haber levantado la demandante del piso, ciertamente la parte demandante no cuenta con prueba para probar la causalidad y por ende una causa de acción bajo el Art. 1802. Conforme los hechos no controvertidos **la demandante fue manipulada en tres ocasiones**. Conforme los hechos no controvertidos **la parte demandante no tiene prueba pericial que relaciones el alegado acto de la demanda con el daño**. Por otro lado, el testimonio de los paramédicos no constituye prueba admisible. La única prueba con la que cuenta la parte demandante es el testimonio del Co-Demandante Roberto Ríos Claudio. **Dicho testimonio es uno especulativo**. Conforme establece la jurisprudencia aplicable **la relación de causalidad no puede establecerse a base de especulaciones o conjeturas**. En conclusión, **la parte demandante no cuenta con prueba para probar su caso por lo que procede la desestimación de la causa de acción por insuficiencia de prueba**." [Énfasis nuestro]

Inconforme, el matrimonio Ríos-Del Valle presentó una oportuna solicitud de reconsideración. El 31 de octubre, notificada el 1 de noviembre de 2022, el TPI dictó Resolución declarando *No Ha Lugar* al petitorio.

---

[9] Véase el Apéndice del Recurso, a las págs. 12 y 13, renumerado a las págs. 161 y 162.

Aún insatisfechos con el dictamen, los apelantes presentaron el recurso apelativo que nos ocupa imputándole al foro primario la comisión de los siguientes errores:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA EN FAVOR DE LA PARTE APELADA Y DESESTIMAR LA DEMANDA HABIENDO EN AUTOS DOCUMENTOS Y PRUEBA ESENCIAL Y MATERIAL QUE ESTABLECE UNA GENUINA CONTROVERSIA DE HECHOS QUE IMPIDEN SUMARIAMENTE DESESTIMAR LA CAUSA DE ACCIÓN DE EPÍGRAFE.

ERRÓ EL TRIBUNAL AL DARLE CREDIBILIDAD Y VALOR PROBATORIO A UNA DECLARACIÓN JURADA EN UNA ETAPA PROCESAL Y NO SUSTANTIVA DURANTE EL PLEITO.

El 6 de diciembre de 2022 dictamos una *Resolución* concediéndole a la parte apelante el término de cinco (5) días para presentar la totalidad del apéndice y el plazo de treinta (30) días a la parte apelada para su oposición. El 15 de diciembre la parte apelante presentó el Apéndice.[10] Por otro lado, concedimos a la parte apelada la prórroga solicitada.[11] El 17 de enero de 2023 la parte apelada presentó su alegato en oposición. Asimismo, acompañó *Moción Informativa en Torno a Presentación Física de Video* en relación con el Exhibit D, el USB. En consecuencia, nos damos por cumplidos y decretamos perfeccionado el recurso.

Evaluado los escritos y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**El mecanismo de Sentencia Sumaria**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, autoriza a los tribunales a dictar sentencia de forma sumaria si mediante declaraciones juradas u otro tipo de prueba se demuestra la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. De proceder este mecanismo discrecional

---

[10] Véase la nota al calce núm. 3.
[11] Véase la *Resolución* del 19 de diciembre de 2022.

se aligeraría la tramitación de un caso, **pues el tribunal solo tendría que aplicar el derecho**. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

Los hechos materiales son los que pueden afectar el resultado de una reclamación, bajo el derecho sustantivo aplicable. *Ramos Pérez v. Univisión Puerto Rico, Inc.*, supra. La controversia sobre el hecho material debe ser real. Al respecto, el Tribunal Supremo de Puerto Rico en *Ramos Pérez v. Univisión Puerto Rico, Inc.*, supra, a las págs. 213-214, expresó que: *Una controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada solo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad de que escuchar lo que lee no podrá a conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria.*

Por otra parte, es esencial reconocer que la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece de manera específica **los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria**; así como la parte que se opone a ella. En lo pertinente, **la parte promovente debe exponer un listado de hechos no controvertidos**, **desglosándolos en párrafos debidamente numerados** y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende

controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Meléndez González, et al. v. M. Cuebas*, 193 DPR 100 (2015), *SLG Zapata Rivera, v. J.F. Montalvo*, supra. De este modo, "[s]e facilita ... el proceso adjudicativo al poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya. Este sistema claramente agiliza la labor de los jueces de instancia y propende la disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación." *SLG Zapata Rivera, v. J.F. Montalvo*, supra, a la pág. 434.

De otro lado, la parte que se opone no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 117 DPR 369 (2009). Por el contrario, **tiene que controvertir la prueba presentada por la parte solicitante**, **a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión**. *González Aristud v. Hosp. Pavía*, 168 DPR 127 (2006). Por otro lado, es conocido que "[c]omo regla general, para derrotar [o sostener] una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente." *Ramos Pérez v. Univisión P.R., Inc.*, supra, a la pág. 215.

Además de la sentencia sumaria "tradicional", existe una segunda modalidad de sentencia sumaria aplicable cuando una de las partes alega que la parte contraria no cuenta con suficiente evidencia para prevalecer en el juicio. La llamada sentencia sumaria por insuficiencia de prueba fue reconocida por el Tribunal Supremo en *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716 (1994). Allí se determinó que, *después de que las partes hayan realizado un*

*adecuado y apropiado descubrimiento de prueba, el promovente puede presentar su moción de sentencia sumaria alegando insuficiencia de prueba por parte del promovido. La moción puede acompañarla con todos los documentos relacionados con el descubrimiento de prueba o sin documento alguno, si [e]stos obran en el expediente del tribunal. La parte promovente tiene el peso de demostrarle al tribunal que la parte promovida no cuenta con evidencia admisible suficiente para probar, por lo menos, un elemento esencial indispensable para su caso. Puede, además, acompañar su moción con evidencia afirmativa, no necesariamente obtenida mediante la utilización de los mecanismos de descubrimiento de prueba, que niegue algún elemento esencial de la reclamación de la parte promovida.* Íd., a la pág. 732.

Advertimos, sin embargo, que la jurisprudencia citada requiere que el promovente de la moción de sentencia sumaria por insuficiencia de prueba alegue y demuestre todos los elementos requeridos para que prevalezca una moción de sentencia sumaria "tradicional", más el elemento adicional de insuficiencia de la prueba. Esto se debe a que "[a] la modalidad de sentencia sumaria por insuficiencia de la prueba le aplican todas las normas y principios que tradicionalmente hemos indicado deben utilizarse por los tribunales al entender en una moción de sentencia sumaria." *Íd.* a la pág. 734. Si existiera duda sobre si hay prueba suficiente o no en torno a alguna controversia de hecho relevante, los tribunales deben denegar la solicitud de sentencia sumaria por ese fundamento. *Íd.*

En *Ramos Pérez v. Univisión Puerto Rico*, 178 DPR 200 (2010) se reitera que bajo esta modalidad de Sentencia Sumaria se requiere que:

> "Dicha solicitud procede cuando la parte demandante no cuenta con evidencia suficiente para probar su caso. Bajo esta modalidad, el promovente debe demostrar

que: (1) la vista es innecesaria; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial, y (3) como cuestión de derecho procede la desestimación de la reclamación. Id. Para disponer de una solicitud de sentencia sumaria por ausencia de prueba es indispensable que se le haya brindado al promovido amplia oportunidad para realizar un descubrimiento de prueba adecuado. Id. En estos casos, la parte promovente debe demostrar que la promovida no cuenta con "evidencia admisible suficiente para probar, por lo menos un elemento esencial indispensable para su caso". Cuevas Segarra, *op cit,* pág. 618."

En fin, de la parte promovida se espera lo siguiente; "para derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de la prueba, la parte promovida puede, entre otras cosas, presentar con su oposición prueba [...] que demuestre que existe evidencia para probar los elementos esenciales de su caso; o que hay prueba en el récord [...] que derrotaría la contención de insuficiencia del promovente; o que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o que [e]ste, por su naturaleza, no es un caso que conviene se resuelva por el mecanismo expedito de la sentencia sumaria." *Medina v. M.S. & D. Química P.R., Inc.,* supra, a la pág. 734.

En síntesis, bajo esta segunda modalidad, el promovente tiene el peso afirmativo de demostrar que las partes realizaron *un descubrimiento de prueba completo, adecuado y apropiado,* es decir, que ha explorado concienzudamente la posibilidad de la existencia de otra evidencia admisible para probar el caso. Además, tiene que persuadir al juzgador de los hechos de (1) que no es necesario celebrar una vista evidenciaria, (2) que su adversario no cuenta con suficiente evidencia para probar al menos un hecho esencial de su reclamación, (3) por lo que procede la desestimación de la reclamación como cuestión de derecho. *Íd.*, a las págs. 733-734. "Claro está, consumado un descubrimiento de prueba adecuado, la parte promovida deberá presentar una oposición a la solicitud de sentencia sumaria debidamente fundamentada. No puede evadir la

moción del promovente por el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable para su reclamación, merece su "día en corte"." *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 787 (2016). A su vez, como a ambas modalidades de sentencia sumaria le aplican las mismas reglas y principios, cuando existe duda sobre si hay o no prueba suficiente, la moción debe resolverse a favor de la parte promovida. *Medina v. M.S. & D. Química P.R., Inc.,* supra, pág. 734.

En lo relativo al ejercicio de la facultad revisora de este Tribunal de Apelaciones sobre la procedencia de la sentencia sumaria, **debemos utilizar los mismos criterios que el Tribunal de Primera Instancia**. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 115 (2015). En *Meléndez González,* el Tribunal Supremo atemperó este estándar a las exigencias de las nuevas Reglas de Procedimiento Civil y a lo que ya había establecido hace una década en *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). Así las cosas, consignó el siguiente estándar:

> "Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo, supra*, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es de *novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, supra, y discutidos en SLG Zapata-Rivera v. J.F. Montalvo, supra.

Tercero, **en el caso de revisión de una Sentencia dictada sumariamente**, el Tribunal de Apelaciones debe revisar **si en realidad existen hechos materiales en controversia**. **De haberlos**, el foro apelativo intermedio **tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil** y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia **aplicó correctamente el Derecho a la controversia**." [Énfasis nuestro]. *Meléndez González et al. v. M. Cuebas*, supra, a las págs. 118-119.

**La acción de daños y perjuicios**

Como es conocido el Código Civil de 1930 fue derogado por la Ley núm. 5-2020 la cual entró en vigor el 28 de noviembre de 2020. Así las cosas, el Artículo 1802 del Código Civil de 1930, 31 LPRA sec. 5141, fue derogado por los Artículos 1536 y 1545 del Código Civil de 2020, 31 LPRA secs. 10801 y 10810. Sin embargo, estos últimos no alteraron la normativa relacionada a las reclamaciones sobre daños y perjuicios ni su jurisprudencia interpretativa.

Así, el Artículo 1536 dispone que "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". Nuestro Tribunal Supremo ha establecido que la culpa o negligencia es **la falta del debido cuidado** que consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente y razonable habría de prever en las mismas circunstancias. *Cruz Flores et al. v. Hospital Ryder Memorial, Inc. et al.,* 2022 TSPR 112, 210 DPR __, del 2 de septiembre de 2022; *Nieves Díaz v. González Massas,* 178 DPR 820, 843 (2010); *Valle v. ELA,* 157 DPR 1 (2002). En *Cruz Flores et al. v. Hospital Ryder Memorial, Inc. et al.*, supra, el alto foro reiteró:[12]

---

[12] Las notas al calce fueron omitidas.

[...] que **el deber de previsión** es el criterio central para que se adjudique responsabilidad por culpa o negligencia.

Ahora bien, el deber de previsión no se extiende a todo riesgo posible, más bien, **se debe examinar si un daño pudo ser el resultado natural y probable de un acto negligente**. Es decir, debemos evaluar si después del suceso, ponderado retrospectivamente, **tal daño aparece como la consecuencia razonable y ordinaria del acto que se alega fue negligente**. Pues, la norma es que el riesgo que debe preverse **debe estar basado en probabilidades y no en meras posibilidades**.

En sintonía con lo anterior, es requerido que entre dicho acto culposo o negligente y el daño sufrido **deba existir un nexo causal adecuado**. Esto es lo que en nuestro ordenamiento jurídico conocemos como **la doctrina de la causalidad adecuada**, la cual pregona que "no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general". De manera que, para surgir el elemento del nexo causal, **debe de existir una relación entre el daño y la consecuencia razonable, común y natural de la acción u omisión imputada al autor demandado**. Por lo tanto, es esa relación directa la que permite concluir que el acto torticero imputado es la causa adecuada del daño reclamado. [Énfasis nuestro]

**La doctrina de causa interventora**

Una causa interventora se define como aquella que "desaparece un mal anterior como la causa próxima del accidente rompiendo la secuencia entre el mal anterior y los daños sufridos." *Ginés Meléndez v. Autoridad de Acueductos*, 86 DPR 518, 522 (1962) citando al *American Law Report*, 66 A.L.R.1121. "La prueba de la suficiencia de la causa interventora no es el mero hecho de su existencia sino su naturaleza y la manera en que afecta la continuidad de la operación de la primera causa y la única en ella y los daños alegados." *Íd.*, citando el 13 A.L.R. 1268. Por ende, "[u]na causa interventora es aquella que desaparece un mal anterior como la causa próxima del accidente rompiendo la secuencia entre el mal anterior y los daños sufridos," *Íd.*, citando el 66 A.L.R. 1121. Por ende, "[c]uando la línea de causalidad ha sido interrumpida por la intervención de alguna causa eficiente e independiente, esa causa interventora debe ser aceptada como la causa próxima". *Andino v. Central Victoria, Inc.*, 57 DPR 310, 319 (1940).

En cuanto a la doctrina de causa interventora como eximente de responsabilidad ocurre cuando el primer acto negligente es tan solo una circunstancia de los hechos que dieron ocasión a los daños y no la causa próxima y directa del accidente. *Ginés Meléndez v. Autoridad de Acueductos*, supra, a la pág. 522. En fin, "[l]a causa interventora ha de ser independiente, suficiente y adecuada para causar los daños resultantes." *Íd.*

Por último, citando el Tratado de *Prosser On Torts* (2d ed.), el Tribunal Supremo en *Ginés Meléndez v. Autoridad de Acueductos*, supra, a la pág. 523, expuso:

> Una causa interventora, ... es aquella que participa activamente en producir el resultado después que ha ocurrido la negligencia u omisión del actor. Ordinariamente un demandado no queda relevado de responsabilidad por una causa interventora que razonablemente pudo ser prevista, ni por una que sea un incidente normal del riesgo creado. Por el contrario, y como principio general, un demandado será relevado de responsabilidad por una causa interventora imprevisible y anormal que produce un resultado que no pudo ser previsto. La regla general en las jurisdicciones americanas es que el mero hecho de que haya un acto de un tercero interventor, no convierte la actuación del actor en una causa remota, si [e]ste pudo o debió haber previsto esta intervención. [citas omitidas]"

**Responsabilidad extracontractual de los establecimientos comerciales**

En armonía con lo anterior y en atención a los elementos necesarios para establecer la responsabilidad en daños y perjuicios de los establecimientos comerciales conforme al Art. 1802, *supra,* debemos reseñar que las empresas que operan establecimientos abiertos al público con fines comerciales tienen la obligación de mantenerlos en condiciones óptimas de seguridad, de manera que sus clientes no sufran daño alguno. *Colón y otros v. Kmart y otros*, 154 DPR 510, 518 (2001).[13]

---

[13] Citando a: *Cotto v. C.M. Ins. Co.*, 116 DPR 644 (1985); *Aponte Betancourt v. Meléndez,* 87 DPR 652 (1963); *Weber v. Mejías*, 85 DPR 76, 79-80 (1962); *Santaella Negrón v. Licari,* 83 DPR 887 (1961); *Goose v. Hilton Hotels*, 79 DPR 523 (1956); *Gutiérrez v. Bahr*, 78 DPR 473 (1955).

De lo anterior se deriva, que dicho deber implica que el dueño u operador del establecimiento ejercerá un cuidado razonable **para mantener la seguridad de las áreas accesibles al público**. No obstante, se ha interpretado que el dueño del establecimiento **no asume una responsabilidad absoluta por todos los daños que pueden sufrir sus clientes, pues no es un asegurador de estos**. *Íd*. En consecuencia, *[p]ara que se le imponga responsabilidad, el demandante tiene que probar que el dueño no ejerció el debido cuidado para que el local fuese seguro. En los casos de accidentes en establecimientos comerciales, este Tribunal ha impuesto responsabilidad siempre que el demandante pruebe que existían condiciones peligrosas dentro de las tiendas correspondientes, "las cuales eran de conocimiento de los propietarios o su conocimiento podía imputárseles a estos". (cita omitida). En otras palabras, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, y que esa condición fue la que con mayor probabilidad ocasionó el daño, y que la misma era conocida por el demandado, o que debió conocerla. (cita omitida). Íd.*, a las págs. 518-519.

Acorde con lo anterior, el demandante tiene que probar que: (1) su daño **se debió a la existencia de una condición peligrosa**, (2) que esa condición fue la que con mayor probabilidad ocasionó el daño, (3) que la misma era conocida por el demandado, o que debió conocerla, y si (4) ante la existencia de la condición peligrosa y su conocimiento, transcurrió un término razonable suficiente para corregir la situación sin que se hubiera reparado. Si la parte demandante no establece con prueba estas condiciones, no procede la imposición de responsabilidad.

**Quantum de Prueba**

La Regla 110 de las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 110, dispone que:

La juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los siguientes principios siguientes:

(a) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.

(b) La obligación de presentar evidencia primeramente recae **sobre la parte que sostiene la afirmativa en el asunto en controversia**.

[...] [Énfasis nuestro]

Del citado inciso (b) surge la obligación que tiene un litigante, que asevera un hecho como parte de la teoría de su caso, de probarlo cumplidamente. Así pues, no le corresponde a la parte demandada traer prueba para desmentir la alegación formulada por la demandante. *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 DPR 527, 531 (1981). La obligación de presentar evidencia primeramente recae **sobre la parte que sostiene la afirmativa**. Además, es norma trillada que meras alegaciones o teorías no constituyen prueba. *Íd.* Por tanto, en lo aquí pertinente, destacamos que la negligencia nunca se puede presumir, pues para concluir que el acto fue negligente **se requiere prueba clara y específica**. *Colón y otros v. K-mart y otros*, 154 DPR 510, 521 (2001).

**III.**

En esencia, los apelantes plantearon que el TPI erró al desestimarle su demanda en daños y perjuicios mediante el mecanismo de sentencia sumaria. Recordamos que en la modalidad de insuficiencia de prueba el promovente tiene que demostrar que las partes realizaron un descubrimiento de prueba completo, adecuado y apropiado, y que aún así la parte promovida no cuenta con suficiente evidencia para probar al menos un hecho esencial de su reclamación. Además, la parte promovida tiene que demostrar que existe evidencia para probar los elementos esenciales de su caso o establecer que la moción es una prematura. Adelantamos que, ninguna de estas instancias, fueron cumplidas por los apelantes. Veamos.

De entrada advertimos que las mociones presentadas por las partes cumplen con los formalidades procesales dispuestas en la Regla 36 de las de Procedimiento Civil, *supra.* Por lo que, podía considerar los escritos y resolver el caso de manera sumaria. Por su parte, los apelantes no controvirtieron alguno de los hechos consignados por el foro primario en la *Sentencia* apelada por lo que los acogemos y hacemos formar parte de este dictamen.

En el presente recurso, los errores fueron argumentados conjunta y primordialmente, el matrimonio Ríos-Del Valle señaló que el foro apelado dirimió credibilidad, lo cual está expresamente prohibido al evaluar una petición de sentencia sumaria. A esos efectos, estos indicaron en el escrito apelativo lo siguiente:[14]

> [...] una vez la apelante cae al piso el gerente de la tienda ordena a su empleado y al codemandante a levantar a la demandante sin esperar por los paramédicos. Sin la autorización de la actora, y con la objeción del actor, *el empleado levanta a la demandante 28 pulgadas del piso por la rodilla y la coloca[rla] en una silla eléctrica.* Ese hecho pudo haber *fracturado la rodilla* de la demandante o agravado el daño acaecido. Así surge de la prueba al establecer que:
>
> P No, no, espérese, espérese, había que moverla, ¿y que usted contestó?
>
> R Que no la podía mover.
>
> P **¿Por qué?**
>
> R **Porque podía tener algún golpe por dentro que uno no sabe.**
>
> P ¿Y dónde usted aprendió eso?
>
> R **¡Ja! Yo, en el trabajo, en el trabajo mío la gente se caía y no la podía mover.**
> Depo. A la p. 34, supra.

Por tanto, los apelantes nos invitan a concluir que el testimonio vertido por el Sr. Roberto Ríos Claudio, en la deposición, derrota el hecho de la **inexistencia de prueba para demostrar que la factura en el fémur fue agravada o provocada por un empleado**

---

[14] Véase la *Apelación Civil,* a las págs. 12-13. Énfasis en el original e itálicas nuestras.

**de Walmart al levantar a la señora Del Valle Vega,** 28 pulgadas del piso por la rodilla, y colocarla en una silla eléctrica. Sin embargo, de este argumento surge que estos ignoran totalmente que en nuestro estado de derecho es requerido que entre el acto culposo o negligente y el daño sufrido exista **un nexo causal adecuado**.

Como reseñamos, la doctrina de la causalidad adecuada dispone que no es causa toda condición sin la cual no se hubiera producido el daño, sino **la que ordinariamente lo produce** según la experiencia general. Así que, para surgir el elemento del nexo causal, **debe de existir una relación entre el daño y la consecuencia razonable**, común y natural de la acción u omisión imputada al autor demandado.

Sobre lo antedicho, puntualizamos que en el hecho núm. 29, el TPI estableció que **ninguno de los peritos** hace una determinación **de causalidad o agravación** de la fractura del fémur izquierdo en sus informes periciales como consecuencia de haberla levantado. Más aún, de la oposición a la solicitud de sentencia sumaria no surge que el matrimonio Ríos-Del Valle cuente con dicha prueba para poder establecer el hecho que alegan conforme dispone la Regla 110 de las de Evidencia, antes citada.

A su vez, tampoco existe prueba de alguna peligrosidad en el establecimiento que produjera el daño reclamado. Como indicamos, los propietarios de establecimientos comerciales, como lo es la apelada, son responsables por los daños ocasionados **a causa de aquellas condiciones de peligrosidad existentes**, siempre que estas sean conocidas por los propietarios o su conocimiento le sea imputable. En el presente caso, los apelantes ni tan siguiera argumentan cuál fue esa alegada condición de peligrosidad existente que provocó que la señora Del Valle Vega se fracturara el fémur. Por el contrario, reiteramos que estos fallaron en presentar prueba que controvierta alguno de los veintinueve (29) hechos consignados en

la *Sentencia* apelada. Así las cosas, no existe controversia alguna en la forma en que ocurrieron los hechos. Esto es que:

> El 3 de agosto de 2020 los apelantes visitaron la tienda Walmart en Caguas cuando a eso de las 9:24 am la señora Del Valle Vega fue impactada en su pierna derecha por la esquina delantera izquierda de un coche de bebé empujado por otra clienta. Accidente que ocurrió en la intersección de un pasillo principal con uno leteral. Al caer al piso comenzó a quejarse, gritar y a llorar del dolor que tenía en su pierna. Luego que cayó al piso, varios clientes movieron, enderezaron y acomodaron a la señora Del Valle Vega. El Sr. Roberto Ríos Claudio, esposo de la esta, la levantó del suelo asistido por un empleado de la tienda y la sentaron en un carro eléctrico de impedidos. Al llegar los paramédicos, estos movieron en "brinquitos" a la señora Del Valle Vega de la silla a una camilla y fue transportada en ambulancia al hospital HIMA donde fue diagnosticada con una fractura intertrocantérica del fémur izquierdo. La señora Del Valle Vega fue operada y luego recibió terapia física.

Por ende, no existe prueba alguna que respalde cualquier alegación relativa a que en la intersección del pasillo principal con el lateral hubiese una condición de peligrosidad conocida por la apelada. Por el contrario, la **causa próxima del daño sufrido por la señora Del Valle Vega fue la colisión -en dicha área- entre esta y el coche de bebé empujado por otra clienta y <u>no por un empleado de Walmart</u>**. Cabe resaltar que, como bien expresó el foro primario, el incidente fue captado por dos cámaras de seguridad de la tienda. Las fotos obtenidas de las grabaciones, así como las grabaciones fueron incluidas por la parte apelada en su solicitud de sentencia sumaria. Sin embargo, la parte apelante **no acompañó dicha prueba en el apéndice del recurso**. Por su parte, la apelada la presentó ante nos y pudimos observar cómo ocurrió el accidente, lo cual sin duda demuestra que la causa próxima del daño sufrido por la señora Del Valle Vega fue la colisión entre esta y el coche de bebé empujado por otra clienta.

Por otro lado, los apelantes no cuentan con prueba alguna para demostrar que el hecho de que un empleado de Walmart ayudara a levantar a la señora Del Valle Vega del suelo constituyó

un acto negligente por el cual deba responder la empresa. Tampoco poseen prueba pericial para demostrar que dicho acto agravó el daño producido por la caída. El que el referido evento "pudo haber" fracturado la rodilla de la demandante o agravado el daño acaecido es puramente especulativo. En cuanto a este aspecto, puntualizamos que los apelantes **no incluyeron en el apéndice copia de los informes periciales** que fueron acompañados por la apelada en su moción dispositiva. Destacamos que en el informe rendido por el Dr. Fausto Boria, perito de los apelantes, este concluyó que:[15]

> Basado en la información disponible, con un grado razonable de certeza médica, existe relación causal entre la fractura del fémur izquierdo y los síntomas residuales en la extremidad izquierda y la lesión recibida en el establecimiento [de] Walmart.

En el diagnóstico el doctor Boria indicó "[d]olor residual post fractura y fijación interna del muslo izquierdo." *Íd.* A su vez, este consignó que "[l]a queja principal de la examinada es dolor en la rodilla izquierda."[16] Por lo que, precisa apuntar que de ninguno de los informes acompañados en el petitorio desestimatorio sumario surge que la señora Del Valle Vega sufriera alguna fractura en la rodilla como resultado de la caída, ni mucho menos que la misma ocurriera como consecuencia de haberla levantado. Dicha alegación, no solo resulta especulativa, sino que además se aparta de la realidad de cómo ocurrieron los hechos. Sobre este punto, y observados los videos acompañados en el Exhibit D, no surge que el empleado de Walmart levantara a la señora Del Valle Vega por la rodilla y mucho menos, que la elevara 28 pulgadas del piso para luego colocarla en una silla eléctrica como alegó la parte demandante-apelante.

Asimismo, cabe enfatizar que, de haber sido cierto, dicho acto

---

[15] Véase el Apéndice de la Parte Apelada, a la pág. 54.
[16] *Íd.*, a la pág. 52.

tampoco constituye una causa interventora. Al respecto, se hace menester consignar que en el presente recurso los apelantes **no argumentaron los elementos de dicha doctrina para su aplicación**. Por ello, y ante la falta de prueba que demuestre que la línea de causalidad fue interrumpida al levantar a la señora Del Valle Vega del piso, es forzoso razonar que este acto es tan solo una circunstancia del incidente primario, es decir, la caída al suelo provocada por la colisión con el coche de bebé. Por lo que, es totalmente desacertado y contrario a derecho la expresión argumentada por los apelantes al exponer que "[n]o tenemos que ser médicos, ni cruzar las fronteras del Mar Caribe para saber que levantar a una persona del piso, que está gritando y te pide que no lo hagas y aun así lo haces, le puedas ocasionar un daño, ya que es **"la consecuencia natural y probable del acto u omisión."**[17] Sin duda, levantar a una persona del piso en determinadas situaciones pudieran ocasionar un daño. No obstante, es deber del promovente presentar evidencia que demuestre los elementos para que se configure una causa de acción en daños y perjuicios. Esto es, que efectivamente el acto del empleado al levantar fue negligente y que el alegado daño ocasionado, la fractura y su agravamiento, fue como consecuencia razonable y probable de dicho acto. Lo que evidentemente no hizo. Además, y como expusiéramos, tampoco existe evidencia que demuestre que el acto de levantarla agravó la fractura o produjera daños adicionales. Recordamos que en nuestra jurisdicción fue eliminada la doctrina de *Res Ipsa Loquitur,* la cual permitía realizar una inferencia permisible de negligencia.[18]

En conclusión, los errores señalados no se cometieron. El foro apelado no erró al desestimar la demanda epígrafe mediante el mecanismo de sentencia sumaria en su modalidad de insuficiencia

---

[17] Véase la *Apelación Civil,* a la pág. 16. [Cita omitida y énfasis en el original].
[18] Véase, *Admor. F.S.E. v. Almacén Ramón Rosa,* 151 DPR 711 (2000).

de prueba.

## IV.

Por los fundamentos antes expuestos, se confirma el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones